**220 A.2d 525.**

JOSEPH VOLPE *et ux. vs.* MARINA PARKS, INC. *et al.*

JUNE 20, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This bill in equity was brought to establish title and the right to possession of certain real estate therein described, to remove certain clouds on title, and for other incidental relief. The cause was heard in the superior court on the answers of the respondents, one answer being in the nature of a cross bill and proof. The trial justice granted the prayers of the complainants' bill. From a decree to this effect both respondents have appealed to this court.

In dispute is title to a parcel of land located on Apponaug Cove in Warwick, Rhode Island. The waters of Apponaug Cove are tide waters. They were formerly known as Cowesett Bay but today are known as Greenwich Bay. We will refer to them herein as Cowesett Bay.

The chain of title by which both complainants and respondent Dickerson claim title to a portion of the land in question is anchored in their common grantor, Herbert C.

Calef. Respondent Marina Parks, Inc. in its answer claimed no interest in the subject real estate.

The record shows that on June 28, 1909, Calef purchased a large tract of land in the Apponaug section of Warwick known as Arnold's Neck. This land was platted into lots and several streets were laid out and designated on this plat. It was duly recorded in the records of land evidence in Warwick and entitled "Arnolds Neck Plat. belonging to Herbert C. Calef. By Frank E. Waterman. July 1909." Hereafter we shall refer to this plat as the Arnold's Neck Plat.

On August 24, 1910, Calef conveyed lots A and B on the Arnold's Neck Plat together with all riparian, water, shore and fishing rights appurtenant thereto to the Arnold's Neck Boat Club. The various rights set forth in the conveyance to the boat club were further described as being located between two points on the plat known as Shell Point and Long Point. This property with the various rights set forth was ultimately conveyed to respondent Dickerson by deed recorded June 9, 1959.

Lot 3 on the Arnold's Neck Plat was conveyed by Calef to Willard F. Lowe by deed dated June 2, 1911. Title to this lot was transferred several times until May 24, 1960, when it was conveyed to the complainants. In all the conveyances the property was described by lot number and reference to the plat. No metes and bounds description was used.

An examination of the Arnold's Neck Plat shows that it is bordered on the northwest by the right of way of the New York, New Haven and Hartford Railroad, on the northeast and southeast by Cowesett Bay, and on the southwest by Mary's Creek. A street or way begins in the northeasterly corner of the plat near lot C and runs in a general southeasterly direction along Cowesett Bay to Long Point. It is described on the plat as "Shore Walk." It is met by

a street 20 feet in width which runs in a general southerly direction past lot 3 and past lot A towards Shell Point. As it passes Shell Point it becomes 50 feet in width.

The outer edge of this street as it passes lot 3 on the plat is drawn as a straight line showing no land lying to the east but the Warwick tax assessor's plat shows land lying to the east of this street.

Both parties agree that on August 21, 1958, the 20-foot street immediately to the east of lot 3 was abandoned by the city of Warwick.

Calef died testate on March 9, 1957, leaving all his property equally to his two children. On December 10, 1959, they conveyed their interest in the land lying to the east of lot 3 to Dickerson together with all riparian and other rights along the shore between Long Point and Shell Point.

It was agreed that lot 3 on the Arnold's Neck Plat contained approximately 5,880 square feet. By deeds recorded January 8, 1962, however, complainants conveyed to a straw a parcel of land on Cowesett Bay having an area of approximately 9,750 square feet and the land was then reconveyed to complainants. The description in both deeds was prepared for complainants by their surveyor.

The surveyor testified that the description was prepared after he had first determined the mean high-water mark to the east of the land abutting lot 3 and as a result of conferring with complainants' attorney. The description was compiled by adding to lot 3 a parcel of land which runs from the easterly boundary of the lot to the mean high-water mark of Cowesett Bay, including therein land upon which the platted street existed and the land between the easterly edge of said platted street and the mean high-water line of the bay. The surveyor had been an employee of the city of Warwick for a number of years and had never observed any highway at this location.

In his testimony complainants' surveyor stated that it

was possible that the Arnold's Neck Plat did not show all the land owned by Calef. Respondent Dickerson produced a marine scientist who gave an opinion that the shore line of Cowesett Bay had changed little over the years.

In June 1962 complainants, pursuant to the provisions of G. L. 1956, §46-6-2, sought from the director of public works approval of their plans to construct a pier in front of their property which would project into the waters of the bay.

Respondent Dickerson became aware of complainants' efforts and on July 6, 1962, pursuant to §34-7-6, notice was served on complainants that he was contesting their title to the land east of lot 3. This litigation then followed.

In his decision and decree the trial justice refers to the street which abuts the easterly edge of lot 3 as Shore Walk. The witnesses, however, all referred to this street as being known as Northup avenue or Midgley avenue and it was by these names that it was abandoned by the city of Warwick. We will refrain from using any name. Where we use the name Shore Walk in this decision we are referring to that way or street which runs in a general southeasterly direction on the Arnold's Neck Plat beginning near lot C and proceeding to Long Point. The trial justice found that there was land owned by Calef which was not depicted on the Arnold's Neck Plat lying between the outer edge of the street and the mean high-water mark of Cowesett Bay. He found that this land was intended by Calef to be dedicated as part of the street. He also found that there had been no appreciable change in the mean high-water mark in the waters of the bay surrounding the plat from the time of its filing. He further declared the deed from the heirs of Calef to respondent Dickerson to be null and void because he ruled that they had no interest to convey in the land in question.

These findings were in amplification of his decision wherein the trial justice found that all the land to the east of lot

3 to the mean high-water mark was a public road and upon abandonment title reverted to complainants as owners of the abutting lot.

The bulk of the evidence in this case is documentary consisting for the most part of deeds, plats and correspondence. The testimonial evidence given by the witnesses was substantially uncontradicted. If the trial justice makes findings of fact, they will be accorded great weight and his decision will not be disturbed unless clearly erroneous. Nevertheless, on an appeal from a final decree in equity the whole case is opened up and the correctness of the decision is subject to review by this court on the basis of the entire record. *Gillis* v. *Main,* 96 R. I. 88, 94, 189 A.2d 808, 811. This is especially true here where we are concerned in determining Calef's intent as it can be construed from the various documents he executed some fifty years ago.

While we agree with the trial justice's findings that Calef owned land to the east of the outer edge of the street which is not shown on the Arnold's Neck Plat, and that the mean high-water mark near complainants' land is the same today as it was in 1909, it is our opinion after a thorough study of the documents in this cause that the trial justice has made an error of law in that he misconceived the nature and extent of the dedication made by Calef when the Arnold's Neck Plat was recorded in July 1909.

It is well settled that when a plat is recorded with streets delineated thereon and lots sold with reference to the plat there is, so far as the public is concerned, an incipient dedication of such streets. *Parrillo* v. *Riccitelli,* 84 R. I. 276; *Town of Bristol* v. *Castle Construction Co.,* 100 R. I. 135, 211 A.2d 627. This dedication constitutes an offer of the street for the use by the public. While here the record does not show any official acceptance of the offer by the municipal authorities of Warwick, there was evidence of acceptance of the offer by its use by the public.

In *Vallone* v. *City of Cranston,* 97 R. I. 248, 254, 197 A.2d 310, 314, we said that the existence of an intent to dedicate will not be lightly presumed. Evidence must be shown which reasonably tends to demonstrate such an intent.

Dedication is an exceptional and unusual method of passing title to interest in land. This being so, the same quality of evidence that is needed to demonstrate the existence of a dedication must be presented to show the extent thereof. The public is not bound to accept dedication, but when it does the acceptance is to be limited territorially to the property dedicated and accepted. *Schmidt* v. *Town of Battle Creek,* 188 Iowa 869, 875. Effect should be given to the full extent intended by the dedicator and no more. Dedication will not be inferred from mere permissive use of unenclosed land. *Callahan* v. *Town of Middleton,* 41 Tenn. App. 21.

Here the intention of Calef can be determined by an examination of the Arnold's Neck Plat and the conveyances made by him of property on the plat.

In his decision, the trial justice stated that he was compelled to find that Calef intended all land due east of the street as it passes lot 3 to be a part of the street because otherwise the owner of this lot 3 would have no access to the waters of Cowesett Bay. This specific finding falls when one examines the Arnold's Neck Plat. In one's consideration of a plat to determine the dedicator's intent all lines, figures and letters must be observed. No part of a plat or map can be considered as superfluous or meaningless. 23 Am. Jur.2d, Dedication §26, p. 24.

Arnold's Neck Plat shows conclusively that its developer Herbert C. Calef had a complete, comprehensive plan in mind for its orderly development. On the northeasterly side of the plat one finds an area marked "Bathing Beach." On the plat in this same area are four rights of way to the beach. They are marked as beach ways and are spaced at

regular intervals, each designed so that all the inhabitants of the plat could travel to the water without any inconvenience. One of these rights of way described on the plat as "4th Beach Way" is within 50 feet of lot 3. All four rights of way open onto the street or way which is entitled Shore Walk. This shows that the trial justice's apprehension as to access to the water was not well founded.

According to the record, the first deed from Calef was to the Arnold's Neck Boat Club wherein lots A and B together with all riparian and other rights appurtenant to these lots between Long Point and Shell Point were conveyed. Included also in the grant was a wharf located near lot A and which is shown on the plat as extending into the waters of Cowesett Bay. Lot 3 is located between Shell Point and Long Point.

While the court below construed this deed as not conveying any of the riparian rights along the bay between these two points other than at lots A and B, we believe that this conveyance to the boat club carried with it as an easement appurtenant, the riparian and other rights as they are set forth in the deed along the entire shore between these two points. This area is an ideal location for a boat club and it would be realistic to believe that Calef was reserving this area for the exclusive use of the boat club. We can see no other reason for the fixing of geographical boundaries as was done here, to wit, Long Point and Shell Point.

The next deed in chronological sequence is one from Calef to the State of Rhode Island, dated May 9, 1911, conveying for park purposes all the land from the inner edge of the street or way entitled Shore Walk out to the waters of Cowesett Bay between lot C and a point on the street just to the west of Long Point on the Arnold's Neck Plat. Here he also provided that Shore Walk was to be maintained as a public highway and that the rights of way which the owners of the several lots on the plat may have by reason of

any deed, then or *thereafter* made, be excepted from the conveyances. This deed demonstrates conclusively that Calef was well aware of the manner of dedicating his property for the public use and the extent thereof. His intent that the owners of lots have access to the water and the location of their access is shown by his specific reservation of these rights of way in this deed.

The plat with its notations and the deed to the State with express stipulations clearly show that Calef intended that the owners of property would use the waters on the northeast side of the plat. The deed to the boat club shows, however, that the waters on the southeasterly side of the plat and the southeasterly shore between Long Point and Shell Point were reserved for the use of the boat club. This express dedication to the public as set forth in the deed to the State plus the specific grant to the boat club negate any implied dedication of the area east of lot 3 beyond that shown on the map—that of a street 20 feet in width.

We hold, therefore, that there was a dedication of the street alone and no more.

In his answer and in his statutory notice, respondent Dickerson concedes that the fee in the westerly 10 feet of the street immediately adjacent to the easterly end of lot 3 is in complainants. He follows the presumption of ownership to the middle of the street as it has been set forth by this court on several occasions. See *Davis* v. *Girard,* 74 R. I. 125, 131, and *Adams* v. *John R. White & Son, Inc.,* 41 R. I. 157, 161.

Having concurred with the trial justice's finding of land lying to the east of the outer edge of the street as it passes lot 3, which is not shown on the Arnold's Neck Plat, and also his finding that there has been little change in the mean high-water mark in the area since the time of the filing of the Arnold's Neck Plat, we hold, therefore that upon abandonment in August 1958 of the street, title to the easterly

one half of the street together with the land to the east thereof out to the mean high-water mark of Cowesett Bay vested in the devisees of Herbert C. Calef. They and their respective spouses conveyed good title thereto to respondent Dickerson. Dickerson therefore is the owner in fee simple of this particular parcel of land. It also follows that the deeds of complainants and the straw to the extent they purport to convey any land beyond the westerly half of the street are null and void.

The respondents' appeal is sustained, the decree appealed from is reversed, and on July 6, 1966 the parties may present for our approval a form of decree in accordance with this opinion for entry in the superior court.

*Gallogly, Beals, Tiernan & Sweeney, Robert O. Tiernan, James M. Jerue,* for complainants.

*Edwards & Angell, Richard M. Borod,* for respondents.