391 A.2d 1150.

PHILIPPE ROBIDOUX *et al. v.* ALFRED PELLETIER *et al.*

JULY 10, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

426

KELLEHER, J. In this civil action the plaintiffs (the Robidouxes) seek injunctive relief and damages because the defendants (the Pelletiers) have obstructed a paved strip of land that leads to the Robidouxes' waterfront home. A non-jury trial was held before a justice of the Superior Court. The trial justice ruled against the Robidouxes, and they have appealed.

In dispute is the Robidouxes' right to travel across the Pelletiers' property over a paved area known as Hey Road. The Robidouxes and Pelletiers own adjoining parcels which are situated in Burrillville along the southeasterly shore of Spring Lake. Spring Lake is a freshwater lake located in a pastoral setting in the northern part of the state. Dotting its shore are summer cottages to which scores of eager vacationers flock to enjoy Spring Lake's refreshing waters as well as to participate in a variety of summertime recreational activities.

This dispute had its genesis in March 1967, when a plat of "cottage lots" was recorded by Spring Lake Beach, Inc., at the office of Burrillville's town clerk. The plat is further identified as

"Section 7
Spring Lake Beach Inc.
Burrillville, R.I.
Scale 1″ = 40′ February 1967
A Replat Of Cottage Lots
A Portion Of Survey
Of Arnold Seagrave, C.E.
Dated January, 1938
At Spring Lake, Glendale
Town of Burrillville, R.I."

The recorded plat portrays several streets running in and around a large tract of land that has been divided into 30 numbered lots. The main thoroughfare, Black Hut Road, which runs east to west, bisects the entire tract so that about 10 lots lie to the south of the road and the remaining lots to its north. Most of the lots to the north of Black Hut Road have the roadway as their southern border and the shore of Spring Lake as their northern boundary.

The plat shows an unnumbered lot north of the road. This particular parcel is identified as "Land Now or Formerly Walsh." The lot is the only waterfront parcel that does not have Black Hut Road as it southern boundary. The lot is bounded on three sides by numbered lots and on the fourth by Spring Lake. Abutting the Walsh property to the east and west, repectively, are lots numbered 208 and 209; to the north is Spring Lake; and to the south, separating the Walsh lot from Black Hut Road, is lot 208A. At the time Section 7 was recorded, the Walsh lot was owned by Raymond F. Walsh and his wife, Lila. Sometime prior to 1967 the Walsh lot, so called, had been owned jointly by Henry Lapan and his wife, Eva. Henry predeceased Eva, and after she died, her will was probated. In her will Eva gave the Spring Lake property to Mr. Walsh.

In 1967 the plat depicted the Walsh lot and its neighbors in the following fashion:

SPRING LAKE

BLACK HUT ROAD

As can be seen, lot 208A contains an area set apart by broken lines denominated as Hey Road, which begins at the northerly edge of Black Hut Road and runs some distance to the southerly boundary of the Walsh property. The westerly side of Hey Road, as it appears on the plat, seems to be about 7 to 15 feet east of the easterly line of lot 209. At the Superior Court trial during December 1975, Mr. Pelletier testified that the macadamized strip on 208A measured about 20 feet in width and ran to within 8 feet of the Robidouxes' house. Mr. Pelletier said that the roadway had been installed a "long time before Lapan owned it." One of the owners of lot 209 reported that she had used the roadway to gain access to her property throughout the 27 years she and her husband had owned the lot. Up to June 1974, the area designed as Hey Road served as the only means of access to the Walsh lot.

After filing Section 7, Spring Lake Beach, Inc., proceeded to sell its numbered parcels. In each of its conveyances Spring Lake Beach, Inc., included a reference to the plat. Each deed also contained certain covenants, conditions, and restrictions regarding the buyer's use of his lot and several clauses granting the buyer various rights, including access to the lake and fishing, swimming, and boating privileges. One of the enumerated rights conferred upon each buyer was:

> "The right to pass and repass (in common with this Grantor, its successors and assigns) over and upon any street, or road, as shown on any plat recorded by this Grantor in Records of Land Evidence in said Town of Burrillville."

Every deed also provided that should the buyer subsequently sell the lot, he would include within the deed to his purchaser all the convenants, conditions, and restrictions that Spring Lake Beach, Inc., had imposed upon the property. Finally, the corporation declared that all the restrictions and rights mentioned in the deed would inure to the benefit of, and bind, not only the immediate parties but "also their respective heirs, executors, administrators, successors and assigns,

whether or not included in any subsequent deeds of conveyance."

In September 1971, Spring Lake Beach, Inc., conveyed lot 208 to the Pelletiers by a deed which referred to the recorded plat and contained all of the standard deed terms to which we have alluded. The Pelletiers were no newcomers to the area. They had occupied the cottage on lot 208 during the previous 20 summers.

In June 1974, Raymond F. Walsh and his wife, Lila, by quit-claim deed conveyed title to their lot to Spring Lake Beach, Inc., and the corporation immediately reconveyed the parcel to the Walshes. In both deeds the parcel is described as being "lot number 9 on the south shore line to the road, along Spring Lake, so-called, on unrecorded Plat of Arnold Seagrave 1938 * * *." The deed to the Walshes also included all the covenants, conditions, restrictions, and rights that can be found in all of the corporation's conveyances of lots located on its Section 7 plat, including the right "to pass and repass * * * over and upon any street, or road, as shown on any plat recorded by this Grantor in Records of Land Evidence in said Town of Burrillville." In addition, Spring Lake Beach, Inc., expressly granted to the Walshes a 10-foot-wide right-of-way which is located at the extreme westerly portion of lot 208A. The right-of-way begins on the northerly side of Black Hut Road and runs the entire length of lot 208A to the Walsh property with its westerly boundary being the lot line that separates lot 208A from lot 209.

Three months later, in mid-September 1974, the Robidouxes purchased the Walsh lot. The deed referred to the 10-foot right-of-way but did not mention the restrictions and rights found in the Spring Lake Beach, Inc., deed to the Walshes.

Thereafter, in late September 1974, a "corrective quit-claim deed" from Spring Lake Beach, Inc., to the Walshes

was recorded with the town clerk. In the original conveyance, the Walsh lot had been incorrectly described as being located on the "south-westerly" side of Black Hut Road. The corrective deed rectified this error and properly placed the lot to the north of this roadway.

In mid-December 1974, Spring Lake Beach, Inc., sold lot 208A to the Pelletiers. The deed referred to the recorded plat, stated that the conveyance was subject to the 10-foot right-of-way, and included the standard clauses regarding restrictions and lot owners' rights. Later, in the spring of 1975, the Pelletiers built a fence across the northern boundary of lot 208A. The fence runs in a westerly direction up to the Robidouxes' right-of-way and then continues southerly along the easterly line of the right-of-way to a termination point alongside Black Hut Road. The fence effectively bars any motor vehicles from traveling along Hey Road. A photograph of the Pelletiers' fence indicates that there is an overlap between the paved strip and the right-of-way.

Subsequently, on August 1, 1975, two events took place. The Robidouxes commenced this suit, and a second "corrective deed" was filed with Burrillville's town clerk. The grantors were the Walshes, and the grantees were the Robidouxes. The sole purpose of the August 1 deed was to specifically set forth all the covenants, conditions, restrictions, and rights that can be found in the June 1974 deed from Spring Lake Beach, Inc., to the Walshes.

In the Superior Court the Robidouxes rested their claim to the continued use of Hey Road on three grounds: (1) an easement by way of prescription; (2) dedication to a public use; and (3) rights granted them by deed. The trial justice was of the opinion that the Robidouxes could not prevail on any one of these theories and consequently entered judgment for the Pelletiers. As far as the Robidouxes' ingress to and egress from their property was concerned, the trial justice found that the 1974 grant of the 10-foot right-of-way amply served the needs of the Walshes and their successors.

The Robidouxes challenge the trial justice's rulings on two grounds. They claim, in the first instance, that he erred in not finding that Hey Road was dedicated to the public use. Secondly, they maintain that he was incorrect when he stated that they had no private easement over Hey Road by reason of the filing of the plat and the representations made in the various deeds.[1]

Turning first to the issue of dedication to public use, we can find no reason to fault the trial justice's decision on this facet of the controversy. Dedication of private property to the public is, of course, an exceptional and unusual method by which a landowner passes to another an interest in his property. *Volpe* v. *Marina Parks, Inc.*, 101 R.I. 80, 220 A.2d 525 (1966). In order for there to be an effective dedication, two elements must exist: (1) a manifest intent by the landowner to dedicate the land in question, called an incipient dedication or offer to dedicate; and (2) an acceptance by the public either by public use or by official action to accept the same on behalf of the municipality. *Id.*, *Vallone* v. *City of Cranston*, 97 R.I. 248, 197 A.2d 310 (1964); *Parrillo* v. *Riccitelli*, 84 R.I. 276, 123 A.2d 248 (1956). The trial justice found that the Robidouxes had not shown that Spring Lake Beach, Inc., intended to dedicate Hey Road for public use. It is with this finding that the Robidouxes take issue.

Whether a landowner has made an offer to dedicate his property to the public is purely a question of determining from the facts of the particular case the owner's intent. In making this assessment, the fact-finder should examine the words or conduct on the part of the dedicator that reasonably tend to demonstrate his wishes. In proceeding with his inquiry into Spring Lake Beach, Inc.'s, dedicatory intent with respect to Hey Road, the trial justice had scant evidence upon which to draw. There was no direct evidence on this matter, since neither party called a representative of the

---

[1]The Robidouxes have not sought our review of the trial justice's decision relative to the existence of an easement by prescription.

corporation to testify, nor was any witness called who was privy to the corporation's representations, if any, regarding Hey Road. In each of its conveyances of individual lots, Spring Lake Beach, Inc., did state that "any" street or road designated on the plat was open for passage by purchasers. While this representation unquestionably indicates a general intent to offer platted roadways to public use, it does not specifically mention particular streets. Thus, the trial justice had at his disposal only the recorded plat from which to glean any clues that might indicate what treatment should be accorded to Hey Road.

In certain cases, however, a recorded plat is all that is needed to disclose a landowner's dedicatory intent. This court has stated that the recordation of a plat with streets delineated thereon and lots sold with reference to the plat reveals the owner's intent to offer the streets to the public for use as ways. *Volpe* v. *Marina Parks, Inc.*, 101 R.I. at 85, 220 A.2d at 529; *Vallone* v. *City of Cranston*, 97 R.I. at 254, 197 A.2d at 314; *Parrillo* v. *Riccitelli*, 84 R.I. at 279, 125 A.2d at 249. The Robidouxes rely upon these cases in support of their claim of error below. In their view, the landowner is deemed to have offered it for public use simply because lot 208A contains within its bounds an area designated as a road.

Application of the *Volpe, Vallone,* and *Parrillo* principle to the facts of a given case is not quite as automatic a process as the Robidouxes maintain. Very often lines and figures drawn on a land-development plat may be unclear as to their intended purpose. When such a case arises, it is the task of the fact-finder to interpret the meaning of the disputed item by careful scrutiny of all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants. *Volpe* v. *Marina Parks, Inc.*, 101 R.I. at 86, 220 A.2d at 529. Each element of the plat is to be given a meaning, and no part can be considered as superfluous.

In the case at bar, the trial justice was of the opinion that,

because of the manner in which Hey Road was depicted on the plat, there was an ambiguity about whether it was to be a public road. The plat reveals that Hey Road is represented as an area between broken or dotted lines. Three other roadways also appear on the map: Black Hut Road, Pine Crest Road, and a "proposed street." All three appear on the map as areas whose boundaries are depicted as solid lines. At the time of trial, only Black Hut Road had been accepted by the town of Burrillville for public use. Solid lines were also used to designate a parking area which is located on the easterly portion of the plat. The drafters of the plat employed broken or dotted line techniques twice — once to delineate Hey Road and again on the southerly side of Black Hut Road, where an area set apart by broken lines runs alongside the entire length of one of the lots that lies to the south of Black Hut Road. This area bears the inscription "easement."

While several inferences may be drawn about the different manner of representing Hey Road from other roadways and public areas, the trial justice concluded that the drafters' choice to use broken lines indicated that Hey Road, unlike the other thoroughfares, was not meant to serve the general public. In reaching this conclusion, the trial justice emphasized that a public roadway across lot 208A would render a sizeable portion of the lot forever committed to public use. According to the trial justice, the developer never intended to impose such a burden on those who subsequently acquired 208A.

As we perceive this facet of the Robidouxes' suit, the trial justice was called upon to make a factual determination based upon the evidence then before him. The trial justice's role in the fact-finding process includes the drawing of inferences. Such inferential findings, whether positive or negative, will be accepted by us as valid and binding so long as they are reasonable and logical and flow from the established facts. His findings will stand even though another equally reasonable set of inferences might be drawn from the

evidence. *Jerry Brown Farm Association* v. *Kenyon*, 119 R.I. 43, 375 A.2d 964 (1977); *Providence and Worcester Co.* v. *Exxon Corp.*, 116 R.I. 470, 359 A.2d 329 (1976); *Chase* v. *Blackstone Distributing Co.*, 110 R.I. 537, 294 A.2d 392 (1972). On this record we see no reason to disturb the trial justice's conclusion that Hey Road was never dedicated as a public way.

In considering the validity of the Robidouxes' contention that, notwithstanding the lack of dedicatory intent by Spring Lake Beach, Inc., they still have a right to use the macadamized strip, we are reminded of the well-recognized rule which holds that a sale of a platted lot with reference to the plat will, as between the grantor and the grantee, give the latter a right to use all of the streets delineated on the plat even though the plat is unrecorded. *Vallone* v. *City of Cranston*, 97 R.I. 248, 197 A.2d 310 (1964); *Crawford Realty Co.* v. *Ostrow*, 89 R.I. 12, 150 A.2d 5 (1959); *Thaxter* v. *Turner*, 17 R.I. 799, 24 A. 829 (1892); *Chapin* v. *Brown*, 15 R.I. 579, 10 A. 639 (1887); *Providence Steam-Engine Co.* v. *Providence & Stonington Steamship Co.*, 12 R.I. 348 (1879); 2 Thompson, *Real Property* §361 (1961); Annot. 7 A.L.R.2d 607 §5 (1949). Such an easement is appurtenant to the property and passes with the conveyance of the property, unless specifically excluded, even though not mentioned in the deed. *Thomas* v. *Ross*, 119 R.I. 231, 376 A.2d 1368 (1977); *Crawford Realty Co.* v. *Ostrow*, 89 R.I. 12, 150 A.2d 5 (1959); *Sullivan Granite Co.* v. *Vuono*, 48 R.I. 292, 137 A. 687 (1927); *Khouri* v. *Dappinian*, 46 R.I. 163, 125 A. 268 (1924).

However, the Robidouxes can take no comfort from these principles to which we have just alluded because their lot was not and is not part of the 1967 plat. Assuming the June 1974 reconveyance to the Walshes by the corporation could be classified as a sale, any transfer of title involved lot 9, which was part of a 1938 unrecorded plat. Thus, if the Robidouxes have an easement, it must be found in one of the conveyances executed by the corporation.

In this facet of their appeal the Robidouxes actually based their claim to a right of uninterrupted use of Hey Road on the clause in the June 1974 conveyance from Spring Lake Beach, Inc., to the Walshes, in which the Walshes and their successors were given the right to pass and repass "over and upon any street, or road" shown on any of the corporation's recorded plats.

Since we are concerned that one's title to real estate should remain free and unfettered, any individual who wished to establish an easement in the land of another must establish the existence of such an easement by clear and convincing evidence. *Berberian* v. *Dowd,* 104 R.I. 585, 247 A.2d 508 (1968). A look at the record clearly reveals that the Robidouxes have fallen far short of sustaining this burden.

The right to pass over any road or street is part of the boilerplate found in all of the deeds where Spring Lake Beach, Inc., sold the numbered lots which are shown on the Section 7 plat. This right, as well as a number of rights, such as the rights to swim in or skate upon the lake, are described in the deed as "easements * * * appurtenant to the premises and not as easements in gross." Thus, if the boilerplate gives the Robidouxes the right to use Hey Road, then everybody residing within Section 7 has the right to travel along this strip.

Our examination of the transcript and the exhibits leaves us as dubious as the trial justice was when he remarked that it was "incongruous to assume that the plaintiffs * * * have an easement in Hey Road." Our doubts are based on observations that differ from those which caused the trial justice to dismiss the Robidouxes' complaint.

In his written decision the trial justice appears to have expressed contrary positions. Early in his decision he pointed to the pass-over-any-road boilerplate in the September 1974 corrective deed from the corporation to the Walshes and said that this "new provision" indicated a clear intent on the part of the corporation to give the Walshes the right to use Hey

Road. Later, however, he referred to the corporation's December 1974 conveyance of lot 208A to the Pelletiers, noted the absence in the deed of any reference to use of Hey Road, and then relied upon the corporation's silence as proof that Spring Lake Beach, Inc., "never considered the area within the dashes to be a platted street * * *."

In making these comments, the trial justice was mistaken when he described the corporation boilerplate as a "new provision." Three months earlier, in June 1974, the corporation's reconveyance of lot 9 contained the same proviso. Consequently, if the boilerplate includes within its reach the area designated as Hey Road, the Walshes' right to use this strip was an easement appurtenant which runs with the land and benefits the Robidouxes — regardless of the fact that the original deed to the Robidouxes made no mention of the easement.

Notwithstanding the availability of all sorts of legalese to support their cause, the Robidouxes are lacking in one vital area. That deficiency is a lack of evidence as to what was the corporate intent when the Spring Lake Beach, Inc., granted the Walshes the right to use any road depicted on the plat.

There is an enigma surrounding the Walsh lot and lot 208A which at this point has not been resolved. The question which still remains unanswered is just what does the area between the broken lines on lot 208A represent? It may be a paper street,[2] and, if so, does it come within the ambit of the boilerplate? Again, the surveyor may have been attempting to set out the bounds of the macadamized strip that had been used by the Lapans and their successors. However, while the plat shows the northern terminus of Hey Road as lying on the line dividing lot 208A from the Walsh lot, Mr. Pelletier testified that the paved strip extended to within about 8 feet of the Robidouxes' home.

---

[2] A paper street is a street which appears on a recorded plat but which in actuality has never been open, prepared for use, or used as a street. *Railo* v. *Northern Pac. Ry.*, 108 Minn. 431, 122 N.W. 489 (1909).

The grant of the 10-foot right-of-way is also part of the enigma. At trial testimony was presented indicating that the Walshes and the corporation were engaged in a dispute concerning the extent of the land that actually composed lot 9. The Walshes contended that the Lapan lot ran from the shore to a road now known as Black Hut Road. At trial the Robidouxes hinted that the corporate grant of the 10-foot right-of-way was one part of a compromise which ultimately resulted in the loss to the Robidouxes of the "back lot" (i.e., lot 208A).

If the Robidouxes were truly intent on unraveling the mystery of Hey Road and the loss of the "back lot," there is evidence which indicates that Section 7 was originally owned by Henry and Eva Lapan. It appears that they sold what is now Section 7 to the corporation in January 1956. If, as the Robidouxes hint, the "back lot" is now lot 208A, it was incumbent on them to bring before the trial justice all the evidence that might make clear what is now obscure. Yet no effort was made to bring out the pre-1967 status of what is today Section 7.

The Section 7 plat was accepted for recording by the Burrillville Planning Board pursuant to the pertinent provisions of G.L. 1956 (1970 Reenactment) ch. 23 of title 45. The approval was signed by the planning board chairman, who appended to the plat a statement which reveals that the board's approval was "based upon a written legal opinion from Burrillville Town Solicitor Irving I. Zimmerman under the date of March 7, 1967." Perhaps the board asked for the solicitor's opinion as a matter of routine, or possibly back in 1967 the commission had doubts similar to those shared by the trial justice and us. The Robidouxes failed to pursue this avenue of inquiry.

In effect, the Robidouxes now ask us to rule for them on a record which is completely devoid of any evidentiary basis which would warrant such a choice. The broken lines appearing on lot 208A may have some significance which

would support their claim, but if this is so, the Robidouxes have produced no proof of such significance. While there was evidence of the use of the paved portion of 208A by a variety of persons, there was absolutely no proof that this use was either permissive or adverse. While the Robidouxes complain about the loss of the "back lot," they made no effort to clarify the what and why of the June 1974 grant of the right-of-way.

There may be some summertime residents of the Section 7 plat who will take up the cudgels and attempt to establish their right to use Hey Road. In the event they make such an effort, they should learn from the Robidouxes. One who asserts a right-of-way over the property of another bears a heavy burden. This court or the trial court will not and cannot guess as to the significance of the Hey Road area or the 1974 grant of the right-of-way. Those who may seek to establish such significance must detail the complete story so that a trial court can then determine what caused the surveyor to do what he did and why Spring Lake Beach, Inc., granted the Walshes the right-of-way. The Robidouxes' efforts in this regard were completely inadequate, and accordingly:

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*Orlando A. Andreoni, by Michael M. McCarthy,* for plaintiff.

*Laurent C. Bilodeau,* for defendant.