Kathleen L. DONNELLY et al.

v.

William J. COWSILL et al.

No. 96–584–Appeal.

Supreme Court of Rhode Island.

July 31, 1998.

---

743

Joseph M. Hall, Gregory S. Schultz, Newport, for plaintiff.

William J. Cowsill, Kathleen Managhan, Newport, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This is an appeal from a judgment entered by a justice of the Superior Court sitting without a jury in an action to quiet title to a strip of land known as Cowsill Lane (lane or way) located in the city of Newport. The plaintiffs, Kathleen L. Donnelly (Donnelly) and Robert and Elaine Baeza (Baezas) (collectively plaintiffs), are the owners of adjacent lots that abut the lane. Together the plaintiffs brought suit against numerous persons whose properties also surround the lane,

including the defendants Donald and Solveig Anderson (Andersons), and sought declaratory and injunctive relief with respect to ownership rights in the lane. The trial justice granted the requested relief and permanently restrained the Andersons from using or trespassing upon the lane. For the following reasons we affirm the judgment of the trial justice and deny the Andersons' appeal.

## I

### Facts and Travel

Donnelly is the owner of lot No. 345 on Newport County Tax Assessors Plat No. 41.[1] The Baezas are the owners of lot No. 308, which is situated directly south of Donelly's lot. Both the Donnelly and the Baeza lots are located to the east of the northern portion of the lane. The Andersons own the parcel of land directly across from plaintiffs' properties and to the west of the lane. The lane has been described in various deeds and plat plans as a "way," a "private way," and finally as "Cowsill Lane." It is the proposed sale of the Andersons' lot and their claim of access to the lane that provided the genesis of this litigation. Before we address the merits of the case, however, a brief history of the chain of title of the subject parcels is necessary.

### Donnelly/Baeza Lots

In 1928 Edith Keller (Keller) conveyed a parcel of land located in Newport County to Oscar Schultz (Schultz). This parcel was created by carving out a small portion of land from the larger estate owned by Keller. The Schultz parcel bordered on Harrison Avenue and extended northward for approximately 500 feet. Because Keller retained the remainder of the lot, she reserved title to a forty-foot-wide strip of land on the western side of Schultz's parcel, extending north from Harrison Avenue. This strip of land, which would later be designated Cowsill Lane, provided access from Harrison Avenue to Keller's remaining property.

In 1949 Schultz divided his parcel in half. Schultz retained the northern half of the property for himself and proposed a subdivi-sion of the lower portion. The subdivision would be bordered on the south by Harrison Avenue and would extend north to the proposed Eastnor Road Extension. The lane, which forms the western boundary of the proposed subdivision, is depicted on the Schultz plat and described as a "private way." Schultz obtained approval for his plan and subsequently sold the subdivided lots.

Thereafter, Schultz conveyed the remainder of his property on the north side of the Eastnor Road Extension to Benjamin B. McCormick. (McCormick), who also owned the land originally retained by Keller for which the right-of-way had been reserved. The deed from Schultz to McCormick is of particular significance to this case because Schultz conveyed to McCormick his entire "right, title and interest in and to that certain forty-foot way as shown on the aforesaid plat ."

In 1956 McCormick filed and received approval for a subdivision plan for half of the land he had received from Schultz in which he proposed the creation of five lots on the north side of Eastnor Road Extension. The forty-foot way is delineated on this plan and labeled "way." McCormick conveyed only three of these lots, however, and retained the two western-most lots for himself.

In 1965 McCormick conveyed the remainder of the property he obtained from Schultz, including the two unsold lots, as well as the land formerly owned by Keller, to Curry Associates, Inc. (Curry). This conveyance included his entire right, title, and interest in the forty-foot way.

On August 17, 1966, Curry conveyed the Keller property to William and Barbara Cowsill (Cowsills) and specifically included as a separate parcel of land the forty-foot strip. Curry retained the rest of the land it had acquired from McCormick and reserved a right-of-way over the lane "for the benefit of Lots to be platted on that property." On April 24, 1967, Curry conveyed the remaining Schultz property to Joseph D. Mancini (Mancini). It is significant that the deed from Curry to Mancini includes a right-of-way over the lane.

1. Tax Assessor's Plat No. 41 is attached hereto as Appendix A.

Thereafter, Mancini proposed yet another subdivision plan for the property. His first plat, approved by the Newport planning board in 1967, created three lots. Lot No. 1, a large tract located directly behind lot Nos. 2 and 3, had no frontage on Eastnor Road Extension and thus necessitated the creation of another forty-foot right-of-way directly to the east of lot No. 3 that is presently known as Eastnor Court. Therefore, as of 1967 lot No. 1 had forty feet of road frontage on Eastnor Court and a deeded right-of-way over the lane.[2]

In 1975, after having erected a dwelling on a portion of lot No. 1, Mancini returned to the planning board with a second subdivision plan in which he proposed to divide lot No. 1 into two lots, one, upon which his home was built, would have frontage on the lane and the other would have forty feet of frontage on Eastnor Court. Because the former lot had no frontage on a public street and only included frontage on the lane, Mancini was required to apply to the Zoning Board of Review of Newport (zoning board) for a variance from the applicable frontage requirements.

The minutes of the meetings before the planning board relative to this resubdivision plan demonstrate the confusion that existed with respect to the status of the lane and the question of whether it was ever intended by anyone to be dedicated to the public. The minutes of the first public meeting, conducted on August 18, 1975, reflect the following:

"The question as to whether or not Cowsill Lane was a public right-of-way was raised. Mr. Jernigan [City Planner] noted that it was shown on the tax assessor's maps and was thus assumed to be a public way. There was some disagreement among the neighbors regarding this matter. If Cowsill Lane is not a public way, then it could have serious implications on the lot that now uses that lane for access because [i]f that lot, which is the subject of this application, is subdivided as requested by Mr. Mancini—then access could be obtained

only through Cowsill Lane; and if it has the possibility of being cut off, that thus leaves the lot in question without access. The Chairman thought that this matter should be looked into."

Accordingly the planning board deferred further action on Mancini's application until a decision was issued by the zoning board with respect to the requested frontage variance, which variance was ultimately granted. On September 15, 1975, the planning board reconvened to consider the Mancini resubdivision application. The minutes of that meeting include the following:

"Mr. Jernigan advised the Board that the subdivision lot located on Cowsill Lane has full rights to use the so-called Cowsill Lane. This he said was noted in the deed. This was later confirmed by the City Solicitor.

"It was noted that the name 'Cowsill Lane' does not appear anywhere in official city records. It was felt that until such time as this street receives official status it shall not appear on any subdivision. The Board members were in complete agreement."

The planning board then voted to approve the subdivision plan. This action was the final division of this property and resulted in the configuration of lots as they presently appear on Tax Assessor's Plat No. 41.

On September 25, 1975, Mancini conveyed lot No. 345 to Larry and Ingrid Richardson (Richardsons). This deed included a conveyance of his entire "right, title and interest in and to that right of way *** designated as Cowsill Lane." On March 29, 1985, the Richardsons conveyed lot No. 345 to Donnelly along with their entire "right, title, and interest in and to that right of way *** designated as Cowsill Lane," which remains the only access to this lot.

The adjacent lot, lot No. 308, is presently owned by the Baezas and has access on Eastnor Road Extension. Although this lot borders the lane on its westerly side, the

2. It should be noted that at this point all parties understood the Cowsills to be the record owners of the way. Indeed, in his 1967 subdivision application Mancini included the following request:

"5. That the 40'-0 strip belonging to Wm. Cowsill upon which the frontage of my house will be located, request that this way be named Cowsill Court. This will provide me a means of addressing and receiving mail."

deed to the Baezas nor the deeds to any of their predecessors in the chain of title do not contain a grant of any right in and to the lane.

### Anderson Lot

At the time Keller conveyed the parcel of land to Schultz, the property located directly to the west of Keller's estate was owned by Margaret T. Ludlow (Ludlow). This property was conveyed subsequently to Gustave J.S. White, Inc., which company in turn conveyed it to Oscar and Alve Lagerberg (Lagerberg) by two deeds dated May 7, 1942, and October 24, 1943. In 1950 a subdivision plan of this property was approved by the city's planning board. It is significant that the eastern boundary of this plat plan depicted the way as a "private way" and that there is no record of a conveyance in any deed or the depiction on any subdivision plan that could be construed as granting any right of access in and to the lane.

In 1978 the Andersons acquired title to a portion of the Lagerberg parcel by deed from Compart Associates. The deed to the Andersons describes a private road, Cowsill Lane, as forming a portion of the easterly boundary of their property but contains no grant of any rights in the way. This lot, which is known as "Ocean Manor," includes several condominium units as well as a smaller parcel that the Andersons had carved out of the lot and had reserved for themselves. This division was accomplished when the Andersons filed the declaration of condominium for Ocean Manor and indicated thereon the reservation of the subject parcel. This smaller lot has approximately 175 feet of frontage on the lane but no other means of ingress to or egress from the property. According to plaintiffs' expert title examiner, the creation of the smaller lot, which was done without the approval of the planning board and was not part of an approved subdivision plan, was most unusual. Furthermore

in filing the declaration of condominium, the Andersons failed to retain any written easement across the remainder of Ocean Manor in order to connect it to the public street bordering the property on the west. Instead the Andersons claimed the right to use the lane as its means of access.

Both Donnelly and the Baezas asserted, however, that they had acquired title to the lane by adverse possession. They instituted this action on February 26, 1995, and sought a declaration that established and confirmed their rights in the property and an injunction restraining the Andersons from trespassing on or using the lane for any reason, including access to their lot. The suit joined all other individuals owning property that surrounded the way. These other defendants defaulted or have stipulated to judgment, and their claims are not before this Court.

After several days of testimony wherein the parties presented numerous witnesses and a volume of exhibits, the trial justice delivered his decision in which he found that legal title to Cowsill Lane lay in the heirs of William Cowsill and his wife and that by deed Donnelly had acquired a right-of-way in the parcel. He also stated that even if this was not the case, Donnelly would have a right-of-way by necessity because there is no other means of access to her property. The trial justice further determined that there were no instruments "of any kind that indicate that the Andersons have any interest in that parcel, either by easement or by way of a deed" and that contrary to the position advanced by the Andersons, the approval by the planning board of the plats submitted by Donnelly and the Baezas' predecessors in title did not constitute dedication of the streets pursuant to G.L.1956 § 45–23–10.[3] "There is absolutely nothing in the documentation presented that these streets were offered for dedication as public ways." Having determined that the Andersons possessed no ownership rights in the lane and having

---

3. General Laws 1956 § 45–23–10, "Approval as acceptance of dedicated areas," provides:
   "Approval of a plat by the plan commission shall be deemed the acceptance by the public of any street or other open space offered therein for dedication, but shall not impose any duty upon the city or town to maintain or improve those dedicated areas until the governing body of the city or town shall have authorized maintenance or improvement of the areas in accordance with the laws of the state, the city, or town charter or other local provisions governing public expenditures for those purposes."

found that the lane was never dedicated for public use, the trial justice found that the Andersons lacked the requisite standing to challenge plaintiffs' claim of adverse possession. From this decision the Andersons appeal.

## II

## Standard of Review

■ It is well settled that the findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal absent a record showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *See Thomas v. Ross,* 477 A.2d 950, 953 (R.I.1984).

## III

## Analysis

As a preliminary matter the Andersons argue before this Court that the decision of the trial justice fails to comport with Rule 52(a) of the Superior Court Rules of Civil Procedure. The Andersons specifically claim that the trial justice failed to articulate his findings of fact on all issues relevant to this appeal and made no findings concerning the testimony of two witnesses, the Newport tax assessor and the Newport zoning officer. The Andersons argue that they submitted extensive posttrial memoranda to the trial justice, including proposed findings of fact, and that his failure to address these issues in his decision constitutes reversible error.

■ Rule 52(a) provides in pertinent part:

"In all actions tried upon the facts without a jury *** the court shall find the facts specially and state separately its conclusions of law thereon."

This Court has previously stated that in order to comply with these requirements, a trial justice "need not engage in extensive analysis and discussion of all the evidence. Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." *Anderson v. Town of East Greenwich,* 460 A.2d 420, 423 (R.I.1983). We have never demanded that a trial justice make findings with respect to every witness or issue in which " 'a full understanding of the issues' " and the conclusions of the fact finder " 'may be reached without the aid of separate findings.' " *Id.* at 423–24. After a review of the record, in particular the trial justice's bench decision, we are satisfied that the trial justice adequately addressed plaintiffs' claim of title and defendants' claim of right to access their land via the lane and therefore complied with the minimum requirements of Rule 52(a).

The Andersons' appeal rests primarily on their assertion that the dedication of the lane was accepted by the public in accordance with the provisions of § 45–23–10 by virtue of the planning board's approval and recording of the McCormick and the Mancini plats. The Andersons claim that the trial justice erred in his interpretation of § 45–23–10 and that for purposes of the statute nothing more than the delineation of a way on a plat is required for dedication. We disagree.

■ At the outset we acknowledge that land delineated as streets and roads on a subdivision map becomes public property upon the approval of the plan commission and that these streets and roads are thereafter considered public roads. *See Town of Bristol v. Castle Construction Co.,* 100 R.I. 135, 139, 211 A.2d 627, 629 (1965). In order for this general rule to apply, however, the land must be clearly marked as a road or a street on the subdivision map. If the land is not so marked, an individual must demonstrate that the land was dedicated by its owner as a street or a road and that the public has accepted the dedication. Section 45–23–10; *see also Robidoux v. Pelletier,* 120 R.I. 425, 433, 391 A.2d 1150, 1154 (1978); *Vallone v. City of Cranston,* 97 R.I. 248, 255, 197 A.2d 310, 314 (1964). We have previously stated, however, that "[d]edication of private property to the public is *** an exceptional and unusual method by which a landowner passes to another an interest in his property." *Robidoux,* 120 R.I. at 433, 391 A.2d at 1154. Accordingly, whereas approval of the plat and its acceptance for filing by the governing body of the town usually constitute the acceptance by the public of the roads offered for dedication,

*Town of Bristol*, 100 R.I. at 139, 211 A.2d at 629, simply placing a line or a mark on a plat or delineating a way or a street for boundary purposes is insufficient to establish conclusively the original owner's intent to offer the property for dedication. On the contrary, in order for there to be an effective dedication the proponent of the dedication must demonstrate "a manifest intent by the landowner to dedicate the land in question, called an incipient ˙dedication or offer to dedicate." *Robidoux*, 120 R.I. at 433, 391 A.2d at 1154 (citing *Vallone, supra*). Thus in the context of this case in order for the Andersons' claim to succeed, they must demonstrate a manifest intent by Benjamin McCormick to dedicate the way for public use when he included it in his 1956 subdivision plan.[4]

The determination of whether a landowner has made an incipient dedication of streets for public purposes requires an examination of the relevant facts to determine the intent of the person seeking approval and acceptance of a plat plan. We have previously held that in most instances the filing and the acceptance of a plat plan are sufficient evidence of a landowner's intent to dedicate land for road purposes, particularly in situations in which lots are subsequently sold with reference to the recorded plat. *See Volpe v.. Marina Parks, Inc.*, 101 R.I. 80, 85, 220 A.2d 525, 529 (1966); *Vallone*, 97 R.I. at 254, 197 A.2d at 314; *Parrillo v. Riccitelli*, 84 R.I. 276, 279, 123 A.2d 248, 249 (1956). However, we have also determined that this is not an automatic process, and when the intent of the developer is unclear or the road or way appears to be delineated for boundary purposes only, "it is the task of the fact finder to interpret the meaning of the disputed item by careful scrutiny of all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants." *Robidoux*, 120 R.I. at 434, 391 A.2d at 1155. "Each element of the plat is to be given a meaning, and no part can be considered as superfluous." *Id.*

■ In this case the trial justice had the benefit of all the deeds of conveyance in plaintiffs' chain of title as far back as the Keller deed, including the deed from Curry to the Cowsills that included the specific conveyance of Cowsill Lane. The trial justice found, and we concur, that legal title to the lane lay in the heirs of William Cowsill and his wife and that Donnelly acquired by deed a right-of-way in the parcel. Moreover, after reviewing the McCormick subdivision plat, as well as the two subsequent Mancini subdivision plats, the trial justice found a complete absence of any evidence demonstrating an intent by McCormick to dedicate the lane for public purposes.

In so doing, the trial justice specifically rejected the suggestion that the way was dedicated to the public pursuant to § 45–23–10 when the McCormick plat was accepted for filing. The trial justice declared that the Andersons had failed to satisfy the first requirement of § 45–23–10, an intention to dedicate the property for public use. "There is absolutely nothing in the documentation presented [that demonstrates] that these streets were offered for dedication as public ways." We agree and can find nothing from our examination of the McCormick plat that would indicate otherwise.

The Andersons also assert that the trial justice erred with respect to their claim of a prescriptive easement in the lane. The trial justice found that the Andersons had failed to produce any evidence to support their claim and therefore denied their right to an easement in the lane. After a review of the record and the applicable case law we can discern no error in this conclusion.

■ This Court has consistently declared that one who claims an easement by prescription has the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for ten years as required by G.L.1956 § 34–7–1. *See Palisades Sales Corp. v. Walsh*, 459 A.2d 933, 936

---

4. The Andersons do not suggest that the way was dedicated for public use by any of McCormick's successors. Not only is such a suggestion inconsistent with their position that McCormick created a public thoroughfare but neither the plat plans nor the conveyance deeds demonstrate an understanding that anyone in McCormick's chain of title possessed an ownership interest in the way sufficient to dedicate the way for public use.

(R.I.1983). Furthermore, we have determined that all these elements must be established by clear and convincing evidence. *Id.; see also Jerry Brown Farm Association Inc., v. Kenyon,* 119 R.I. 43, 51, 375 A.2d 964, 968 (1977). The determination of the fact finder on these important issues is entitled to great weight and will not be disturbed unless the trial justice has misconceived or overlooked material evidence. *See Palisades Sales Corp.,* 459 A.2d at 936.

■ In this case the trial justice rejected Mr. Anderson's claims that he had visited the property once or twice a month for the prescribed period or that he had undertaken any activity on the property that could be considered notice to the world sufficient to establish a prescriptive easement over the northern section of the lane. Furthermore, the trial justice found and we agree that the Andersons retained an implied easement by necessity through the Ocean Manor property to Chastellux Avenue and that therefore, they do not require access to the lane. *See Bovi v. Murray,* 601 A.2d 960, 962 (R.I.1992) (implied easement is predicated upon theory that when a person conveys property he or she includes or intends to include in the conveyance whatever is necessary for the use and enjoyment of the land retained).

Last, the Andersons contend that the trial justice erred in deciding in favor of Donnelly's and the Baezas' claims for adverse possession. This argument rests on the premise that the lane is a public street and thus cannot be acquired by adverse possession.

In rejecting this alleged point of error, we note that the Andersons' argument is flawed in two respects. First, as our opinion clearly indicates, we conclude that the lane was never dedicated or accepted as a public street in accordance with the procedure prescribed in § 45–23–10. Furthermore, having no ownership interest in the lane by title, prescriptive use, or easement, the Andersons have no standing to challenge the plaintiffs' claims of adverse possession. *See Shalvey v. Zoning Board of Review of Warwick,* 99 R.I. 692, 701, 210 A.2d 589, 594 (1965) (ownership of land that constitutes subject matter of dispute is essential to one's right to obtain the relief sought).

## IV

### Conclusion

Accordingly the appeal of the defendants is denied and dismissed. The Superior Court judgment appealed from is affirmed, and the case is remanded to the Superior Court.

SCHOOL

CHASTELLUX AVE.

R-120

SEE PLAT 4

Appendix A

R-10

SEE PLAT 39

City of Newport, R.I.

TAX ASSESSOR'S PLAT

PLAT-41
(SHEET 2)

SCALE: 1 INCH = 200 FEET

DRAWN:          DATE: OCTOBER 1970
CHECKED:        REVISED: 12-75