DECISION
This is an action brought pursuant to Title 34 of the General Laws of Rhode Island to quiet title to three parcels of real estate located in the City of Newport and commonly referred to as Scott's Wharf, North Commercial Wharf, and a connecting north-south way. Plaintiff has contended that these ways were and are private and that the only parties having an interest in the same were the property owners abutting the ways. As the only other abutter, Harbourview at Newport Condominium (Harbourview), has conveyed all its right, title and interest in and to the Plaintiff. Plaintiff is owner of the fee to the ways, subject to various rights granted by the Plaintiff to Harbourview to pass and repass over North Commercial Wharf and to other restrictions on use.
The Defendant State of Rhode Island originally contended that all or a portion of Scott's Wharf, North Commercial Wharf, and the connecting way were on filled land and, as such, the fee was owned by the State of Rhode Island pursuant to the so-called "public trust" doctrine. Briefly, the State argued that it, as sovereign, holds title to tideflowed land in trust for the people and cannot alienate these lands, except under unusual circumstances. As North Commercial Wharf, Scott's Wharf, and the connecting way were on what was once tide-flowed land, which had never been properly alienated by the State, they were still owned by the State. In the matter of Greater Providence Chamber of Commerce v. State,657 A.2d 1038 (1995), the Supreme Court of Rhode Island did not sustain the State's interpretation of the public trust doctrine. The instant matter was delayed pending the outcome in Greater Providence Chamber, and after the decision, this matter came on for trial in July 1996 and the matter was tried throughout the balance of 1996 and ended in May, 1997.
Despite advocating through discovery and much of trial that Scott's Wharf and North Commercial Wharf terminated at the waters of Newport Harbor, this position was abandoned by the State near the end of trial, and this issue is no longer before the Court. In addition, the State's original position that these ways were public from colonial days has also been abandoned to the extent that the State has only argued to this Court that the ways became public sometime in 1921 or thereafter upon the completion of an offer of dedication in the "Ebbs Plat" by public user.
As a result, the issue for this Court has been identified and narrowed. This Court is called upon to determine the intent and purpose of the trustees of Narragansett Bay Realty in preparing and recording the "Ebbs Plat" in 1921.
A case of more recent vintage, Robidoux v. Pelletier, 391 A.2d 1150,120 R.I. 425 (1978), is a good place to start the analysis in order to determine whether there has been a dedication to the public of a road, way, street, etc. shown on a recorded plat. The fact finder should be aware of the principles stated in Robidoux:
 "Whether a landowner has made an offer to dedicate his property to the public is purely a question of determining from the facts of the particular case the owner's intent. In making this assessment, the fact finder should examine the words or conduct on the part of the dedicator that reasonably tends to demonstrate his wishes. In proceeding with his inquiry into Spring Lake Beach, Inc.'s, dedicatory intent with respect to Hey Road, the trial justice had scant evidence upon which to draw. There was no direct evidence in this matter, since neither party called a representative of the corporation to testify, nor was any witness called who was privy to the corporation's representations, if any, regarding Hey Road. In each of its conveyances of individual lots, Spring Lake Beach, Inc., did state that "any" street or road designated on the plat was open for passage by purchasers. While this representation unquestionably indicates a general intent to offer platted roadways to public use, it does not specifically mention particular streets. Thus, the trial justice had at his disposal only the recorded plat from which to glean any clues that might indicate what treatment should be accorded to Hey Road."
These underlined quotes apply herein as well, 1) there was no evidence presented by either party as to the intent of the developers of the Ebbs Plat 2) the court had only the plats and deeds both before and after the recording of the Ebbs Plat to consider.
The application of the "platting and parceling pattern" is not the automatic process presently argued by the defendants. First the fact finder must, as discussed in Robidoux infra, "interpret the meaning of the disputed item by careful scrutiny of all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants."
The deed in the Newport Land Evidence Records in Vol. 114, Pages 315 to 321 from all of the owners abutting North Commercial Wharf when the "way" was widened, (Ex. 2 of plaintiff and also defendants' BU) not only negates a public use but it contains specific language limiting its use to the owners of the abutting parcels and their heirs and assignees.
 ". . . the said parcels to remain open and be unobstructed forever with the right of way of the parties of the first part hereinbefore granted as appurtenant to the several parcels of land owned by them respectively and their several and respective heirs and assigns, as owner of said parcels, to pass and repass over the same at any and all times on foot and with horses, carriages, automobiles, teams and other vehicles."
In the matter of Samuel Nardone Co. et al v. Bianchi, 524 A.2d 1114
(R.I. 1987) where the court discussed incipient dedication, the court held that when a successor to the developer attempted to eliminate a way platted as "Schubert Road", on a motion to dismiss brought by owners of lots on the plat who objected thereto, that these owners had an interest and could object to the successor developer altering Schubert Road. This clearly indicated that until there is an acceptance by the public or acceptance by the governmental entity under the appropriate statutory procedure, the owners on the plat have the right to participate and approve or reject the change of any way on the plat.
The defendants' argument that the abutting owners joining in the conveyance at Vol. 114 Page 315 to 321 was done as a cautionary action is disingenuous. Abutting owners of lots on a plat have an interest in the passageways until accepted by the government or a determination of acceptance by the public.
The concept of proof of dedication by the platter is almost always non-existent, otherwise the word "incipient" would not be used and a case such as this one would not be brought; thus the Court must look at indirect evidence of dedication.
Lack of taxation by the authorities, in this jurist's mind, despite the argument by the defendants, lends no weight for or against dedication. The practical difficulty of achieving a just value is far too difficult, when one looks at the ability of arriving at a fairer result by assessing more salable property and adjusting the rate of taxation to raise the necessary funds to run the government is far simpler than attempting to value a street and then decide who to tax.
Later, in December 1923, when the interested parties, the trustees and purchasers of the parcels on the Wharf petitioned the City to accept theright of way (emphasis added) known as Commercial Wharf, i.e. South Commercial Wharf, it was not characterized as a public highway, nor even a street or road.
The exhibits presented by both parties and presented pertaining to the actions of the Newport Fire Department, as well as Tax Maps, etc. do not alter the Court's determination that the ways in questions are private. These are substantial properties on the Wharf area and should a conflagration occur thereon there is no doubt that the fire departments would respond utilizing the ways whether private or public. The days of posting a fire medallion on one's structure in order to gain service by a fire department are long gone.
While there are many designations of passages or ways on a plot plan, certain ones can lead to the designation sought by the Defendants. Street, road, highway appear to or imply public usage without restriction. Lane, alley, driftway have lesser implications. In dictionary definitions, both law dictionaries and college dictionaries, as well as common usage, wharf means a dock, pier or quay to which water surface ships are tied to, i.e. berthed for purposes of loading and unloading.
When the Court examines the Ebbs Plat upon which the Defendants press their positions, (Exhibit BT — The First Ebbs Plat 11/25/21, Exhibit BW — The Second Ebbs Plat 1/9/22 [probably 1923]), there are three designations noted: (1) Commercial Wharf, (2) North Commercial Wharf and (3) Scott's Wharf. Not street, road, lane, driftway, by way or any other designation. Viewing the early history when wharfs were structures erected in the tidelands with the idea that ships could tie up to and discharge or load their cargo these had to be passageways to transfer goods to and from ships to other places. Considering the cost of erecting and maintaining those ways, it certainly argues against the idea that in platting the ways the developers were dedicating these ways to the public.
The wharfs as laid out do not connect with recognized public highways on all sides but lead to dead ends. This appears to deny the concept of public ways. In Greene v. O'Connor, 18 R.I. 56 (R.I. 1892) the statement by the court that a strip of land was nonetheless a highway even though it terminated on private property at one end, is not helpful in using as a precedent for incipient dedication since the deed in the Greene case, infra, had a condition that "the strip of land shall be forever kept open and used as a public highway and for no other purpose."
When discussing a "platting and parceling" situation the classic example would be if we imagine a large parcel of land whether it were square or rectangular. On the four exterior boundaries are public roads on the north, south, east and west sides. The developer then creates lots on the parcel with one or more passageways going from one public road to the other in a north-south direction, and one or more passageways going in an east-west direction. The resulting square or rectangular lots that have been laid out would have access to the public roads at the perimeter of the parcel and all passageways would be identified as streets on the plan. Then when all the parcels would be transferred the "incipient dedication" would be complete, only then, needing acceptance by the governmental identity or by the public.
Thus the Court finds that there is insufficient evidence by any standard, that there has been an incipient dedication of North Commercial Wharf, Scott's Wharf or the connector, that there is nothing on the Ebbs Plats, so-called, which indicates that the ways were for the general use of the public; that access was generally available for the occupants of the platted lots, their friends, visitors, etc.
In the event there might be deemed to exist an incipient dedication, there has been no acceptance by the government under statutory authority and there is a total lack of evidence of public acceptance.
The Plaintiff is to present a judgment in accordance with this decision.