Cecil D. SARTOR

v.

COASTAL RESOURCES MANAGEMENT COUNCIL et al.

No. 86–106–M.P.

Supreme Court of Rhode Island.

May 24, 1988.

Thomas S. Hogan, Hogan & Hogan, East Providence, for plaintiff.

Alan J. Goldman, Jeanne L. Shepard, Goldman & Biafore, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before this court on a petition for certiorari filed by Cecil D. Sartor. The petitioner seeks review of a Superior Court order filed February 18, 1986, entered after a written decision sustaining a decision of the Coastal Resources Management Council (CRMC). The CRMC therein designated a portion of a parcel of land owned by the petitioner as a public right-of-way to the tidal waters of the state. The trial justice denied the petitioner's appeal pursuant to G.L. 1956 (1984 Reenactment) chapter 35 of title 42, the Administrative Procedures Act. The petitioner alleges, inter alia, that the designation of public rights-of-way by the CRMC is violative of constitutional and statutory provisions. The petitioner further asserts that the CRMC's findings of fact and conclusions of law are clearly erroneous and that its decision is arbitrary, capricious and characterized by an abuse of discretion. For the reasons set forth below, the petition for certiorari is denied and the judgment of the trial court is affirmed.

The instant dispute revolves around the question of whether petitioner's predecessor in interest dedicated a portion of a parcel now held by petitioner as a public right-of-way. The parcel in question is situated in Barrington, Rhode Island, at the junction of Mushechuck Creek and Narragansett Bay.

Pursuant to the mandate of art. I, sec. 17, of the Constitution of Rhode Island,[1] the General Assembly, by statute established the Coastal Resources Management Council, an administrative agency, charged with the responsibility of the preservation, protection, development, and, where possible, the restoration of the state's coastal resources.[2] One of its duties is to designate public rights-of-way to the tidal areas of the state and to carry on a continuing discovery of said rights-of-way.[3] To that end, the CRMC "rights of way subcommittee"[4] (subcommittee) held a hearing on May 7, 1981, in part concerning the possible designation of a strip of land at the northernmost part of petitioner's property as a public right-of-way.

---

[1] Article I, section 17, of the Constitution of Rhode Island provides:

"The people shall continue to enjoy and freely exercise all of the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this state * * * and they shall be secure in their rights to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values; and it shall be the duty of the general assembly to provide for the conservation of the air, land, water, plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural environment of the people of the state by providing adequate resource planning for the control and regulation of the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state."

[2] General Laws 1956 (1980 Reenactment) chapter 23 of title 46.

[3] Section 46–23–6 provides in pertinent part:

"(E) Rights of way.—The council shall be responsible for the designation of all public rights of way to the tidal water areas of the state, and shall carry on a continuing discovery of appropriate public rights of way to the tidal water areas of the state."

[4] The powers of the "rights of way subcommittee" are set forth in § 410.01–4 of the State of Rhode Island Coastal Resources Management Program at 146A–146B (1978). Subsequent to the commencement of proceedings, said program was superseded by the State of Rhode Island Coastal Resources Management Program as amended June 28, 1983.

The subcommittee received documentary evidence and conflicting testimony regarding the existence of a public right-of-way. Evidence which tended to suggest that a public right-of-way had in fact been dedicated included an entry in the bylaws of the Barrington Town Council dated January 5, 1915, that stated:

"The President (Harrington J. Anthony) presents the request of Charles D. Owen, asking for permission to close up a street running from Sycamore Ave [sic] [now Nyatt Road] to the shore of Narragansett Bay, and to be allowed to open another way to the shore *further to the north.* The Clerk (Frederick P. Church) is instructed to inform Mr. Owen, that the Council have no objections to his closing said street by fencing the same provided he opens another one to the west shore of the Bay." (The record is unclear whether the emphasis was in the original or subsequently added.)

The subcommittee also received a report prepared by the Waterman Engineering Co. in October 1931 that contained a map. Both the CRMC and the trial justice found that a passageway appears thereon whose location exactly corresponds with the disputed public right-of-way. The passageway is not denominated as a right-of-way. However, the passageway is clearly identified as a right-of-way on the tax assessor's plat No. 5 map. This last map is undated. A plat plan submitted to the subcommittee that was prepared by the Stanley Engineering Company and recorded in November of 1949 indicates that a strip of land corresponding to the location of the land in question was opened as a right-of-way in 1915. A title report dated April 15, 1981, was submitted to the subcommittee. The report contained many of the aforementioned documents as well as documents tracing the chain of title to the property. The author thereof concluded that the parcel in question was subject to a public right-of-way in the form of an easement in the land by dedication and public use. Taking an opposing tack, petitioner's attorney argued that the real estate records in Barrington are devoid of any entry that shows that any of petitioner's predecessors in interest ever created an identifiable public right-of-way.

The full CMRC conducted a hearing on September 9, 1981. The petitioner's attorney again argued that although the Barrington Town Council had granted a request by a former owner to abandon a street contingent upon the opening of a right-of-way further to the north of the parcel, said right-of-way was never recorded in the appropriate register. Testimony was then received that the asserted public right-of-way was used as such for fishing up until the time that petitioner's immediate predecessor acquired the parcel, at which point the right-of-way was blocked off. At the September 9 meeting the Barrington town solicitor informed the CRMC that the town of Barrington had decided to accept what he termed an offer of dedication of the right-of-way. Although the subcommittee had made no recommendation to the CRMC prior to the meeting, at the meeting it recommended that the disputed area be designated a public right-of-way. At the conclusion of the meeting a motion carried to so designate the disputed area.

■ The scope of review on a writ of certiorari is limited to a review of the record and such review must extend only to questions of law that appear in the petition. *Almstead v. Department of Employment Security,* 478 A.2d 980 (R.I.1984). The grounds for reversal must appear upon the face of the record. *Prospecting Unlimited, Inc. v. Norberg,* 119 R.I. 116, 376 A.2d 702 (1977). As will be seen below, our review of the record reveals that the trial justice committed no reversible error.

I

■ The petitioner argues that the power legislatively conferred upon the CRMC, an administrative agency within the purview of the executive department, to determine public rights-of-way constitutes an exercise of judicial powers. According to this theory such exercise is unconstitutional because said powers may be exercised only by the judicial department, not the executive, or for that matter, legislative branches of the state government.

Article V of the Constitution of Rhode Island provides that "[t]he power of the government shall be distributed into three departments: the legislative, executive and judicial." Neither the executive department nor the legislative department may arrogate to itself the exercise of judicial power. *See G. & D. Taylor & Co. v. Place,* 4 R.I. 324, 353–54 (1856). However, "[t]o some extent, and in some sense, each of the powers appropriated to different [governmental] departments * * * must be exercised by every other department of the government, in order to [render] the proper performance of its duty." Id. at 332. As will be seen, *infra,* the function performed by the CRMC is not judicial.

As stated earlier, the CRMC is charged with the responsibility of making findings regarding the existence of public rights-of-way to the tidal-water areas of the state and designating them as such. Hearings are held and evidence is taken, initially by the subcommittee and later by the full CRMC.[5] Persons aggrieved by CRMC determinations may appeal to the Superior Court pursuant to the Administrative Procedures Act, § 42–35–15. Further review may be had by way of a petition for certiorari to this court, pursuant to § 42–35–16.

At the outset we observe that administrative institutions are as old as the American government itself. 1 C. Koch, Jr., *Administrative Law and Practice* § 1.9 at 17 (1985). This court has long upheld the exercise of quasi-judicial powers by administrative agencies. *Aniello v. Marcello,* 91 R.I. 198, 207, 162 A.2d 270, 274 (1960). Although we acknowledge that in relation to petitioner the subcommittee and later the CRMC acted in a quasi-judicial capacity, the mere fact that some discretion was exercised in carrying out the mandate set forth in G.L. 1956 (1980 Reenactment) § 46–23–6(E) does not, vel non, make such discretion an exercise of the judicial power within the purview of the State Constitution. *Berberian v. Lussier,* 87 R.I. 226, 235, 139 A.2d 869, 874 (1958).

We have previously observed that the essence of the exercise of judicial power consists of rendering judgments to be executed pursuant to the inherent power of the tribunal. *G & D Taylor & Co. v. Place,* 4 R.I. at 336. An examination of the CRMC's enabling legislation reveals that it is bereft of such power. Thus, pursuant to § 46–23–7, as amended by P.L. 1980, ch. 208, § 1, the CRMC is unable to exercise its purported judicial powers except by resort to the appropriate article X court.[6]

The petitioner argues that the designation of a public right-of-way necessarily requires a determination that the land over which such right-of-way extends is burdened thereby. According to petitioner such designation is tantamount to a determination that the public has acquired an interest in the owner's land. The petitioner urges that such a determination may be

---

**5.** The petitioner filed an administrative appeal from an adverse decision by the CRMC on December 19, 1981. At the time said administrative appeal was filed, § 46–23–6(E) had not yet been amended to set forth the specific evidentiary matters to be considered by the CRMC in arriving at a decision. Subpart (f) of 46–23–6(E), as amended by P.L. 1984, ch. 244, 1, now provides:

"In designating rights-of-way the council shall consider the following matters in making its designation:
(1) Land evidence records;
(2) The exercise of domain over the parcel such as maintenance, construction or upkeep;
(3) The payment of taxes;
(4) The creation of a dedication;
(5) Public use;
(6) Any other public record or historical evidence such as maps, street indexes;
(7) Other evidence as set out in § 42–35–10.

A determination by the council that a parcel is a right-of-way shall be decided by substantial evidence."

We note parenthetically that both the CRMC rights-of-way subcommittee and the full CRMC considered all applicable matters set forth in subpart (f) in conducting proceedings with regard to the disputed public right-of-way. Compliance with 46–23–6(E)(f) is not required with regard to actions filed in the Superior Court prior to the effective date of P.L. 1984, ch. 244, 1.

**6.** Article X, section 1, of the Constitution of Rhode Island provides:

"Power vested in court.—The judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish."

made only by a court of law, not by an administrative agency which is a creature of the executive department.

We have already sustained the constitutionality of the Coastal Resources Management Council Act in the face of a challenge asserting that the enabling legislation constituted an impermissible delegation of legislative authority. *Milardo v. Coastal Resources Management Council of Rhode Island*, 434 A.2d 266, 270–71 (R.I.1981). We have also upheld the statute when the same was challenged on grounds that it was violative of procedural due process, substantive due process and equal protection requirements. *Santini v. Lyons*, 448 A.2d 124, 127 (R.I.1982).

We view the proceedings conducted by the CRMC as merely quasi-judicial in nature. *Aniello v. Marcello*, 91 R.I. at 207, 162 A.2d at 274. Such proceedings are not judicial in nature, for the "tribunal" is totally lacking in power to enforce its purported decree. *G & D Taylor Co. v. Place*, 4 R.I. at 336. Although the CRMC may ultimately conclude that a landowner previously dedicated a parcel as a public right-of-way, such conclusion is not enforceable by the CRMC by virtue of its own power. Instead the CRMC must apply to a court of competent jurisdiction for enforcement thereof. Section 46–23–7. Because much of the activity of the CRMC consists of ongoing investigatory work, it is questionable whether the courts are appropriate fora to conduct such factfinding activity. *See Weeks v. Personnel Board of Review of North Kingston*, 118 R.I. 243, 251–53, 373 A.2d 176, 180 (1977) (Doris, J. dissenting).

We find that § 46–23–7, taken in conjunction with the regulations contained in the State of Rhode Island Coastal Resources Management Program Appendix B: Management Procedures § 10 at 286–87 (1978), facilitates judicial intervention at the point at which the dispute has ripened sufficiently to warrant such intervention. *Milardo*, 434 A.2d at 271–72; *State Board of Health v. Roy*, 22 R.I. 538, 542–43, 48 A. 802, 803–04 (1901).

The Legislature, mindful of the unique expertise possessed by administrative agencies, set forth the scope of review of a final decision of an administrative agency.[7] Thus, a landowner aggrieved by a final decision by the CRMC is free to show, for example, that said decision was procedurally unsound, ultra vires, unlawful, clearly erroneous, or arbitrary. In sum we find that the CRMC exercises legislatively delegated powers pursuant to rigorous statutory control and subject to judicial intervention at the appropriate juncture in the proceedings. Thus, we hold that the CRMC does not exercise judicial power.

## II

▉ The petitioner asserts that the decision of the CRMC, designating as a right-of-way a portion of a parcel held by petitioner, is violative of G.L. 1956 (1985 Reenactment) § 8–2–14.[8] That provision gives the Superior Court original jurisdiction of all actions at law where title to real estate or some interest therein is at issue. The petitioner argues that § 46–23–6(E) should be interpreted as conferring merely investi-

7. General Laws 1956 (1984 Reenactment) § 42–35–15 provides in pertinent part:

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error or law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

8. General Laws 1956 (1985 Reenactment) § 8–2–14 provides in pertinent part:

"Jurisdiction of actions at law.—(a) The [S]uperior [C]ourt shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue * * *."

gatory powers upon the CRMC.[9] Thus the vice chairman of the CRMC would be required to seek relief as an original matter in the proper judicial forum pursuant to § 46–23–7(d).

An examination of chapter 23 of title 46, the CRMC enabling act, reveals that the Legislature intended that the CRMC designate public rights-of-way. Indeed, the language of § 46–23–6(E) plainly states that "[t]he council shall be responsible for the designation of all public rights of way to the tidal water areas of the state * * *." Detailed procedural guidelines are now set forth in subsection (f) of § 46–23–6(E). *See* part I, *supra.* As noted earlier we have already sustained the constitutionality of this procedural mechanism in *Milardo* and *Santini.*

We also note that the Legislature plainly knows how to invoke judicial process without requiring resort to an administrative determination. In fact, the Legislature, in § 46–23–6(E), requires judicial intervention without prior resort to an administrative proceeding in connection with the acquisition of parking facilities when the landowner fails to agree upon a sum to be paid for his land. Section 46–23–6(E) is the very section that authorizes the CRMC to conduct proceedings to designate public rights-of-way to the tidal areas. Thus it is clear that the Legislature intended the CRMC to make findings with regard to the existence of such public rights-of-way, not an article X court.

We have previously observed that in cases of ambiguity or apparent inconsistency between statutory provisions which are in pari materia or affect related subjects, the various provisions must be construed in such a manner that the apparent objects of the Legislature are effectuated. *Davis v. Cranston Print Works Co.,* 86 R.I. 196, 133 A.2d 784 (1957).

As petitioner points out, § 8–2–14 vests original jurisdiction in the Superior Court in all actions at law when title to real estate or some interest therein is at issue. However, the proceedings conducted by the CRMC are not actions at law. *See* part I,

*supra.* Such proceedings are administrative inquiries into the existence of public rights-of-way. Said public rights-of-way have previously been established by actions on the part of prior landowners and public officials. The CRMC merely recognizes and places an official imprimatur upon a previously existing status. Findings by the CRMC are subject to judicial intervention once administrative remedies are exhausted. *Jacob v. Burke,* 110 R.I. 661, 666–69, 296 A.2d 456, 459–60 (1972). The Superior Court then exercises full original jurisdiction to determine questions regarding interests in real property. The scope of such determinations were set forth by the Legislature in § 42–35–15. We defer to the fact-finding role given by the General Assembly to the CRMC. *Weeks,* 118 R.I. at 247, 373 A.2d at 178. The Legislature has determined that questions of fact are to be resolved by the CRMC. Such holding is by no means in derogation of the Superior Court's original jurisdiction in cases where an interest in real estate is at issue. However, even if we were to view § 8–2–14 as in conflict with § 46–23–6(E) we would be bound to apply § 46–23–6(E) because that statute was, of the two, the last enacted. *Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 248–49, 397 A.2d 889, 893 (1979). In sum, we find that § 46–23–6 is not in conflict with § 8–2–14. Thus we find no statutory bar to its application.

### III

The petitioner asserts that findings of fact and conclusions of law made by the CRMC were clearly erroneous and its failure to so find was erroneous as a matter of law.

■ The scope of review of decisions by administrative agencies in the Superior Court has been set forth in § 42–35–15. *See* parts I and II, *supra.* Section 42–35–15 provides that that court shall not substitute its own judgment for that of the agency. In reviewing a decision of the trial court by way of certiorari, this court ap-

9. *See* footnote 3, *supra.*

plies the "some" or "any" evidence test and reviews the record to determine whether legally competent evidence exists to support the findings. *Mendonsa v. Corey,* 495 A.2d 257, 260 (R.I.1985). We shall reverse factual conclusions of administrative agencies only when they are completely bereft of competent evidentiary support in the record. *Milardo,* 434 A.2d at 272. Applying the aforesaid standard, we find each finding of fact and conclusion of law to be amply supported by the record.

The CRMC determined in "Finding 1" that the parcel in question, referring to the land currently held by petitioner, is shown on a recorded plat prepared by the Waterman Engineering Co. We have carefully examined the record and conclude that such finding is fully supported. Each document and map contained therein is easily referable to the parcel in question.

"Finding 2" states that the parcel is dedicated as a public right-of-way and describes its location. The term "dedication" as used in connection with the instant dispute is a term of art. It refers to a transaction whereby a landowner offers a passageway for use by the public. *Volpe v. Marina Parks, Inc.,* 101 R.I. 80, 85, 220 A.2d 525, 529 (1966). Of course, the existence of an intent to dedicate will not be lightly presumed. *Id.* In order for there to be an effective dedication there must exist "(1) a manifest intent by the landowner to dedicate the land in question * * * and (2) an acceptance by the public either *by public use or by official action to accept the same* on behalf of the municipality." (Emphasis added); *Robidoux v. Pelletier,* 120 R.I. 425, 433, 391 A.2d 1150, 1154 (1978).

Our examination of the record indicates both that a predecessor in interest intended to dedicate a public right-of-way and an acceptance thereof. According to the record Charles D. Owen came before the Barrington Town Council. Owen sought permission to close a street bisecting his property. Owen offered in return to open another way to the shore further to the north. The town council agreed, provided another passageway was, in fact,

opened. Later maps clearly mark the appearance of such a passageway along the bank of Mushechuck Creek. Almost all of the maps contained in the record that were prepared after Owen appeared before the town council explicitly identify the passageway as a right-of-way. The record contains competent evidence that the passageway was used permissively by the public as a right-of-way until the parcel in question was obtained by petitioner's immediate predecessor in interest. We hold that the record contains sufficient evidence upon which the CRMC based its finding of an offer of a dedication. Acceptance of the same is sufficiently evidenced by the action of the Barrington Town Council in 1915 and by public use thereof long before the attempted acceptance by the Barrington town solicitor at the September 9 meeting of the CRMC. *Mendonsa v. Corey,* 495 A.2d at 260; *Milardo v. Coastal Resources Management Council,* 434 A.2d at 272; *Volpe v. Marina Parks, Inc.,* 101 R.I. at 85, 220 A.2d at 529.

"Finding 3" states that the town of Barrington considers the contested strip of land a right-of-way and has acted to accept it. The petitioner urges that testimony by the then-town solicitor suggests that the town did not yet view itself as benefited by such an easement. Even if the town solicitor believed that the passageway in question had not yet been accepted as a public right-of-way, his mistake would not serve to obliterate the same. Because the record amply supports the dedication and acceptance of a public right-of-way, we view petitioner's contention to be without merit.

"Finding 4" states that evidence at the subcommittee hearing and at the full council hearing indicates that the disputed strip of land has been used by the general public to gain access to the water. Contrary to petitioner's disingenuous assertion, testimony at both hearings supports said finding.

We further hold that each conclusion of law propounded by the CRMC accords with the statutory and case law of this jurisdiction. Thus we hold that the CRMC has been granted jurisdiction to designate pub-

lic rights-of-way by reason of chapter 23 of title 46; that there has been an effective dedication of the passageway in question pursuant to *Robidoux v. Pelletier, supra;* that the evidentiary burdens have in fact been met for the designation of this right-of-way; and that the evidence submitted establishes that the passageway in question is a public right-of-way by dedication and usage. The foregoing points of law have been extensively examined earlier in this opinion and do not merit further discussion here.

The petitioner's final assertion of error is that the November 26, 1981 decision of the CRMC is arbitrary, capricious, and characterized by an abuse of discretion. This court has previously stated that "[w]hen we review a judgment of the Superior Court on a petition for certiorari, our inquiry is limited to determining whether the record reflects evidence, or reasonable inferences that may be drawn therefrom, to support the findings of the tribunal whose decision is being reviewed." *Guarino v. Department of Social Welfare,* 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980). Applying the foregoing standard, we find that the judgment of the trial justice was supported by competent evidence. Thus we hold that the trial justice did not commit an error of law in rendering judgment for the respondent Coastal Resources Management Council. Section 42–35–16.

We have considered the other assertions of error by the petitioner and find them to be without merit.

Accordingly, the petition for certiorari is denied and the writ heretofore issued is quashed. The judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court with our decision endorsed thereon.