[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter before the court is the appeal of E.G. G Sealol (hereinafter, "Sealol") from a decision of the Rhode Island Commission for Human Rights (hereinafter, "the Commission") which found that Sealol discriminated against Anthony Joseph Fontana (hereinafter, "Complainant") on the basis of his age in terminating his employment. Jurisdiction in this court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
TRAVEL
On August 11, 1989, Complainant was laid off from his employment with Sealol. Complainant was sixty-three years old at that time and had been with Sealol since June, 1969. On November 16, 1989, Complainant filed a charge with the Commission alleging that Sealol violated G.L. § 28-5-7 by terminating Complainant's employment on the basis of his age. Investigations were conducted into this matter and on August 8, 1990, the Preliminary Investigating Commissioner ruled that there was probable cause to believe Sealol violated § 28-5-7 in terminating Complainant. A notice of hearing and complaint were issued August 10, 1990. Hearings on this matter were held on June 10, 1992 and August 27, 1991. On February 5, 1993, the Commission rendered a Decision and Order in this matter. Said decision found that Sealol had violated § 28-5-7 and, in addition to orders relating to compensating Complainant for losses he suffered while unemployed, Sealol was ordered to offer Complainant, "the next available position in sales, marketing or quality control for which he is qualified." (Decision and Order, pg. 10). Sealol has now appealed that decision to this court under the provisions of G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTUAL BACKGROUND
In its decision, the Commission made the following findings of fact. Complainant was a sixty-three year old man at the time of his termination. He received his Bachelor's Degree in Mechanical Engineering from Brown University and began employment with Sealol in 1969. Complainant worked in the areas of sales and marketing with his primary focus on aircraft engine accounts until 1983. During that time frame, Complainant had an excellent record in sales and even won a sales production competition in 1979 or 1980. In 1982, Complainant was placed under the direction of a new manager, Peter Bennett. It appears from the record that Mr. Bennett, age 35 at the time, made disparaging and/or sarcastic remarks to Complainant about his age such as referring to him as "young fella" and telling Complainant "when you can no longer hit the fast hard ones, you should quit the game." Tr. Vol. 2 at pp. 101, 102. In 1983, Mr. Bennett posted Complainant's job and Complainant took a position in quality control. In 1985, Complainant returned to the sales and marketing field in Sealol's Pressure Science Division. He received merit increases in 1986, 1987 and 1988.
In 1988, Mr. Bennett once again became Complainant's supervisor. Although Mr. Bennett was mildly critical of Complainant's job performance in his 1988 rating review, he nonetheless gave Complainant an overall satisfactory rating. In 1988, Complainant was given responsibility in the Aerospace Divisions but experienced the loss of half his territory to the newly hired Mr. Gollob. Mr. Gollob was in his thirties at this time. At the hearing before the Commission, Mr. Bennett testified that his evaluation of Complainant's performance in the fall of 1988 was unsatisfactory and that he decided at this same time to replace Complainant in the sales engineer position. In January of 1988, Scott Harmon, who was approximately 30 years old at this time, was hired by Sealol to assume Complainant's position. Complainant was informed that he would be transferred to another division and was indeed transferred from Sales to Marketing in March 1989. At this point it should be noted that the Commission found that during the period from 1988 to 1989, Mr. Bennett made it more difficult for Complainant to achieve his objectives by continuously decreasing his accounts and assigning him to several new accounts. Decision and Order at p. 5 quoting Respondent's Exhibit A. In April, 1989, however, Mr. Bennett once again gave Complainant a satisfactory performance review and even stated that Complainant had "contributed to the growth of the FCTG Aerospace/Defense Group" during the term of his employment. Decision and Order at p. 4 quoting Respondent's Exhibit A at p. 6.
In March, 1989, although he was not fully trained to be a Marketing Engineer, Complainant began work in the Marketing Division. He was supervised by Albert Tomao, age 47. At this same time, Sealol was beginning to lay off personnel in the face of a deteriorating financial situation. In April and August of that year, Mr. Tomao recommended that Complainant be among those laid off as he was not as qualified as the others in the department. Mr. Tomao testified that he considered Complainant to be in "a training mode at this time." Tr. Vol. 2 at p. 63. At no time, however, did Mr. Tomao inform Complainant that his work was unsatisfactory. On August 9, 1989, Mr. Tomao informed Complainant that he was being laid off. It was noted by the Commission that Complainant was the oldest employee in the Marketing Department at this time and that the employees in the Marketing Department assumed Complainant's duties. Decision and Order at p. 6.
The Commission also made several other pertinent findings of fact. At the time Complainant was laid off, a Mr. Columbi, who was approximately 30 years old and had been with Sealol for three years, was also scheduled for termination. Sealol, however, found alternative employment for Mr. Columbi but not for Complainant. Decision and Order at p. 6. Also, in the summer 1990, there was an opening in the Marketing Department. Sealol did not, however, recall Complainant but replaced him with a new employee. Id.
The Commission also had before it a 1987 memorandum from Sealol's Director of Personnel which advised managers that marginal senior employees should be warned of problems with their performance to help avoid age discrimination claims if such employees were terminated. Complainant's Exhibit 3.
STANDARD OF REVIEW
The court's review of a decision of the Commission is controlled by G.L. 1956 (1988 Reenactment) § 42-35-15(g) which controls appeals from administrative agencies in general. Section42-35-15 provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Accordingly, this court may not substitute its judgment for that of the agency as to the credibility or weight of the evidence that was presented to the agency. Costa v. Registrar of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I.Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). This court instead must confine itself to a review of the record of the administrative hearing to determine if any "legally competent evidence" exists to support the agency's decision. Turner v.Department of Employment Security, 479 A.2d 740, 742 (R.I. 1984). Legally competent evidence is indicated by the presence of "some" or "any" evidence supporting the agency's findings.Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993); Sartor v. Coastal Resources Management Council,542 A.2d 1077, 1082-83 (1988). The court, therefore, may reverse factual conclusions of administrative agencies only when they are "completely bereft of competent evidentiary support in the record." Sartor at 1083, see also, Milardo v. CoastalResources Management Council, 434 A.2d 266, 270 (R.I. 1981). Alternatively, this court may vacate the decision of an administrative agency if such decision is "clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa, 543 A.2d at 1309.
G.L. 1956 (1988 Reenactment) § 28-5-7(1)(A)(B) provides that it shall be an unlawful employment practice for an employer to discriminate against an employee with respect to hire, tenure, compensation, terms, conditions or privileges of employment on the basis of race, color, religion, sex, handicap, age or country of ancestral origin. For assistance in determining whether or not a discriminatory employment practice has occurred under our general laws, a trial justice is to look to the decisions of the federal courts which relate to the Civil Rights Act of 1964 for guidance. Newport Shipyard v. Rhode Island Commission for HumanRights, 484 A.2d 893 (R.I. 1984). Thus, in rendering a decision on a complaint filed under § 28-5-7, the standard which must be applied by the Commission is that which has been set out inMcDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), andTexas Department of Community Affairs v. Burdine, 450 U.S. 248
(1981). These cases have established the basic allocation of burdens and order of presentation of proof of discriminatory treatment as follows:
 "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.[1]
 Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to `articulate some legitimate, nondiscriminatory reason for the employee's rejection.'
 Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).
The above framework was further clarified by the Supreme Court inSt. Mary's Honor Center, et al. v. Melvin Hicks, ___ U.S. ___, 113 S.Ct. 2742, 1993 WL 220265 (1993). In this case, the Court held that even if the fact-finder determines that the employer's proffered reason for the termination constitutes a pretext for discrimination, additional proof of discrimination is required. Such additional proof is required because the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff. Id. 1993 WL 220265 at p. 3 quotingBurdine, 450 U.S. at p. 253. Accordingly, whether the plaintiff's preferred reason for his termination is correct remains a question for the fact-finder but whether or not the Commission's findings are supported by legally competent evidence in the record is subject to review by this court. Again, however, only if the Commission's factual determinations and credibility judgments are "completely bereft of competent evidentiary support in the record," may this court reject them. Sartor at 1083,see also, Milardo, 434 A.2d at p. 270 (R.I. 1981).
ANALYSIS
Following the framework of McDonnell Douglas and Burdine,
as set out above, the court is convinced that Sealol discriminated against Complainant on the basis of his age. After a review of the record, the court finds that the factual conclusions of the Commission are supported by "legally competent evidence" and so finds that the Commission correctly determined that Complainant had proved a prima facie case of age discrimination. It is clear that Complainant was 63 years old at the time of his termination, well within the protected age group of ages 40 to 70. The court is also convinced that Complainant was discharged from his employment and not merely laid off as Sealol contends. The fact that it was Sealol's intention to discharge Complainant and not merely lay him off is proven by the evidence that there was at least one opening in Sealol's Marketing Division subsequent to Complainant's departure and that Complainant was not recalled to work. That position instead was given to a new and younger employee. The evidence in the record also shows that Complainant's duties were assumed by a younger employee. This is clear from the testimony which indicated that Complainant was the oldest of the employees in his department and that the other employees in Marketing assumed his duties and responsibilities after his departure. Finally, there is substantial evidence that Complainant was qualified to do his job. His educational background seems quite sufficient for his work. Additionally, Complainant received satisfactory reviews during his years with Sealol and even when transferred to Marketing, where his supervisor said he was not as skilled as his fellow employees, he received no indication that his work was substandard. The fact that he was never warned of substandard performance is even more significant given the aforementioned memorandum from the Director of Personnel that marginal senior employees should be warned to avoid discrimination claims.
Even were it found that Complainant was not qualified to do his work in Marketing, the court would still find that Complainant was a qualified employee when he was terminated. It was the decision of his superiors at Sealol to place him in the Marketing Department at a time when it is clear that he was qualified to continue his job in the Sales Department, a position in which he had been successful for many years. The court finds it highly probable that the transfer to Marketing was in and of itself an act of age discrimination which was designed to create a situation whereby Complainant could be terminated for seemingly legitimate and legal reasons. The court, therefore, finds that the evidence supports the conclusion that Complainant was qualified to perform his work when he was discharged. Thus, the prima facie case was proven by Complainant.
Sealol articulated as its "legitimate, nondiscriminatory reason for the employee's rejection" that Complainant's lay off was motivated only by economic considerations. The Commission obviously rejected this contention and the court is convinced that the evidence supports that action. While it does appear that Sealol was indeed facing financial difficulties, it is still clear that the decision to lay off Complainant was motivated by other considerations. If this was not the case, Sealol would have sought out alternative employment for Complainant as it did for the far younger Mr. Columbi who was set for discharge at the same time as Complainant. Additionally, Sealol had the opportunity to recall Complainant to work in the summer of 1990 but opted instead to hire a new employee. Moreover, a pattern of discriminatory behavior on the part of Sealol was displayed to the Commission by Complainant. On two occasions after assuming a supervisory position over Complainant, Mr. Bennett caused Complainant to be transferred out of the department in which he was best suited to work, i.e., sales. The second of these transfers sent Complainant into a training type of situation in the Marketing Department at a time when Sealol was facing financial difficulties and was beginning to lay off personnel. This transfer, of course, ultimately led to Complainant's discharge. Evidence was also presented to show that Sealol terminated another older and experienced employee, a Mr. Snow, age 62, at the same time Complainant was discharged. Mr. Snow, like Complainant, received no warnings about poor performance before his discharge and was replaced with a 25 year old man who possessed far less experience and had far less seniority with Sealol. Given these facts and the evidence which shows that Complainant was at least a satisfactory employee for Sealol for almost 20 years, there is sufficient evidence to support a finding that Sealol's financial problems, although real, were not the true motivation for discharging Complainant. The court is therefore convinced that the Commission had before it sufficient evidence to find that Sealol's claim that Complainant's discharge was motivated only by financial considerations constituted a pretext for discrimination.
Following the above cited federal case framework, the StMary's case requires that additional proof of discrimination be offered even if the court finds the defendant's proffered reasons for the termination to be a mere pretext for discrimination. This standard was not applied by the Commission as that decision had not yet been rendered by the Supreme Court. This court, however, is convinced that the Commission had before it more than enough evidence to find that Sealol discriminated against Complainant on the basis of his age.
For the aforementioned reasons, the court finds the Commission's determination that Sealol discriminated against Complainant on the basis of his age to be supported by reliable, probative and substantial evidence in the record. The decision of the Commission is, therefore, affirmed.
Counsel shall submit the appropriate order for entry.
[1] The elements of a "prima facie" case of age discrimination are:
1) That plaintiff is within the protected age group, that is 40 to 70 years;
2) That he was demoted or discharged.
3) That he was replaced by a younger person or persons outside the protected age group; and
4) That he was qualified to do the job.
Loeb v. Textron, Inc., 600 F.2d 1003, 1009 (1st Cir. 1979).