DECISION
This matter is before the Superior Court on remand from the Rhode Island Supreme Court. The case originated in the Superior Court when plaintiff, James Foley, owner of two units in the Osborne Court Condominium, sought injunctive relief against the condominium association. Foley sought to enjoin foreclosure and auction of his condominium units. The defendant, Osborne Court Condominium, answered the complaint and filed a counterclaim against plaintiff.
At all times material hereto, plaintiff was the owner of two units of the Osborne Court Condominium. The declaration to create the condominium and the site plan were recorded in 1981, although the subject units were not constructed until 1985. The Osborne Court Condominium Association is comprised of all owners of units in the condominium. In spring 1995, the Management Committee adopted rules and regulations in response to noise, parking, and other problems which had occurred during the previous summer.
At various times, the plaintiff was cited for violating these rules and regulations. After affording him notice and an opportunity to be heard, plaintiff was fined for these violations. The fines were unpaid, and in September and October 1995, liens were placed on plaintiffs units. In March 1996, while the association was offering to sell the units at public auction, the parties entered into a consent agreement. The plaintiff paid approximately ten thousand dollars ($10,000) to settle the fines assessed against him.
During the spring and summer of 1996, plaintiff was again cited for violating the rules and regulations, and was again fined for the violations, and liens were recorded on his property. The association threatened foreclosure on his units to enforce the liens. The foreclosure was averted by the filing of the within action for injunctive relief.
By agreement of the parties, the Superior Court ordered the trial of the action on the merits to be advanced and consolidated with hearing on the application for preliminary injunction with respect to Counts I, II, and III of the complaint. Following hearings on May 9, 1997 and May 15, 1997, the Superior Court denied plaintiffs prayer for injunctive relief and ordered judgment for the defendants on Counts I, II, and III. In her decision, the trial justice failed to address any of the constitutional claims asserted by plaintiff. Judgment entered on June 30, 1997, and from that judgment, plaintiff took a timely appeal to the Rhode Island Supreme Court.
On February 11, 1999, the Supreme Court ruled that although other constitutional claims had been waived, the plaintiff had adequately briefed and argued his claim of an unconstitutional delegation of power to a private entity in violation of Article 10 of the Rhode Island Constitution (hereinafter Article 10). The Supreme Court remanded the case to the Superior Court with directions to determine whether Title 34, Chapter 36.1 of the Rhode Island General Laws, entitled "Condominium Law," (hereinafter the 1982 Act) represents an unconstitutional delegation of judicial or police power to the condominium association, a private entity.
The Court further directed that if the trial justice determines the delegation of power to be constitutional, she must then make an additional finding. She must determine whether applying the 1982 Act to the subject dispute significantly modifies the relationship between the plaintiff and the condominium association. The declaration of condominium was recorded prior to 1982 under Title 34 Chapter 36 of the Rhode Island General Laws entitled "Condominium Ownership Act" (hereinafter the Old Act) Article 10, Constitution of Rhode Island provides:
 "Section 1. Power vested in court. — The judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish."
The pertinent provisions of the 1982 Act that allegedly violate Article 10 are those which empower condominium associations with the right to assess fines and use foreclosure proceedings to collect those fines. The Old Act authorizes an association to charge fees for common expenses and provides that unpaid fees become liens on an owner's interest in the unit. § 34-36-20. The 1982 Act further authorizes an association to impose charges for late payment of assessments and to assess fines for violating the declaration, bylaws, and rules and regulations of the association. The pertinent provisions of the 1982 Act are set forth below. Section 34-36.1-3.02, entitled "Powers of unit owners' association," provides that the Condominium Association has the power to:
 "(1) Adopt and amend bylaws and rules and regulations;
 (11) Impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the association as provided in R.I.G.L. § 4-36.1-3.20."
Section 34-36.-3.1.16, entitled "Lien for Assessments" provides:
 "(a) The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in accordance with and subject to the provisions of R.I.G.L. § 34-36.1-3.21. . . .
Section 34-36.1-3.20, entitled "Enforcement of declaration, By-Laws" provides:
 "(a) An executive board may impose and assess fines against a unit owner as a method of enforcing the association's declaration, bylaws, and rules and regulations. Such fines may include, but are not limited to, daily fines for continued violative conduct in the future. Notice and the opportunity for a hearing must be provided to an alleged violator before a fine is imposed and assessed. All fines shall be a lien on the unit charged.
 (b) Daily fines imposed and assessed pursuant to this section shall be no more than one hundred dollars ($100) per day for residential condominiums nor more than five hundred dollars ($500) per day for commercial condominiums.
 (c) Fines other than daily fines imposed and assessed pursuant to this section shall be no more than five hundred dollars ($500) for residential condominiums and no more than one thousand dollars ($1000) for commercial condominiums."
Section 34-36.1-3.21, entitled "Foreclosure of condominium lien" provides:
 "(a)(1) If a condominium unit owner shall default in the payment of any assessment, fine, or any other charge with is a lien on the unit in favor of the association or its assigns, then it shall be lawful for the association or its assigns, through its executive board, to sell the unit of any defaulting unit owner and the benefit and equity of the redemption of the defaulting unit owner and his heirs, executors, administrators, and assigns therein, at public auction upon the premises or at such other place, if any, as may be designated for that purpose by the association or its assigns."
Several cases have been cited by the parties in support of their respective positions. However, none involves a similar delegation of authority to a private entity. Among those cited is the case of Berberian v. Lussier, 87 R.I. 226, 139 A.2d 869 (1958). In Berberian v. Lussier, supra., the applicable financial responsibility statute, R.I.G.L. § 33-32-1, et. seq. required an operator of a motor vehicle who was involved in an accident to file evidence of financial responsibility. The complainant failed to comply with this requirement, and his license and registration were suspended without hearing. Berberian argued that the financial responsibility act was unconstitutional because it violated Article 10, section 1 of the Rhode Island Constitution by conferring upon the registrar of motor vehicles a judicial function. The court disagreed and concluded that the legislature, in empowering the registrar to suspend licenses and to determine the amount of surety required, was permitting the exercise of police power, not judicial power. The fact that some discretion must be exercised to execute the regulations does not make it the exercise of judicial power. The legislature may delegate the execution of regulations promulgated by them to any board or body. Id. at 234, 235.
The parties also cite the case of Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077 (1988). In that case, a landowner sought review of a decision of the Coastal Resources Management Council designating a portion of his land as a public right-of-way to tidal waters. The landowner argued that the Council's determination was the unconstitutional exercise of judicial power. The Court rejected the landowner's argument based upon the fact that the Council was totally lacking power to enforce its purported decrees and was required to apply to court for enforcement of its determinations.
The plaintiff argues that the 1982 Act creates a tribunal that exercises judicial power because it gives the condominium association the authority to enforce its fines by foreclosure and sale. The defendants contend that the delegation of power to a condominium association is strikingly similar to the statutory powers granted to a mortgagee, which have been applied within constitutional challenge.
Section 34-11-22 of the Rhode Island General Laws, entitled "Statutory power of sale in mortgage," provides, in pertinent part that:
 "The following power shall be known as the "statutory power of sale' and may be incorporated in any mortgage by reference (emphasis added):
 . . . if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgage and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction . . . and to receive the proceeds of such sale or sales, and from such proceeds to retain all sums hereby secured whether then due or to fall due thereafter, or the part thereof then remaining unpaid, and also the interest then due on the proceeds, together with all expenses incident to the sale or sales, or for making deeds hereunder, and for fees of counsel and attorneys, and all costs or expenses incurred in the exercise of such powers, and all taxes, assessments, and premiums for insurance, if any, either theretofore paid by the mortgagee or his or her executors, administrators or assigns, or then remaining unpaid . . .
This statutory power provides a method of collecting debts and disposing of the property of another without application to the court. The statute permits the mortgagee to incorporate such a provision into its agreement with the mortgagor. This seemingly harsh and expeditious method of debt collection is based upon a contractual relationship between the parties. If the mortgagee does not incorporate the provision into the agreement, the power of sale does not apply.
To this extent, the subject sections of the 1982 Act differ from the statutory power of sale. The provisions of the 1982 Act relating to the authority to impose and enforce fines apply to unit owners even if the provisions are not referred to in the condominium documents. The 1982 Act applies to all condominiums created after 1982 and also applies to condominiums created prior to 1982 with certain exceptions. Even if associations and owners fail to accept voluntarily provisions of the 1982 Act, the act will still apply prospectively with respect to the subject sections unless such application invalidates provisions of their declarations and bylaws. Section 34-36.1-1.02 (a)(1)-(2), (4).
A more significant difference between the statutory power of sale and the 1982 Act relates to the nature of the charges that constitute the basis for the foreclosure and sale. The default referred to in the statutory power of sale refers to the failure of a mortgagor to perform obligations with respect to the secured property and under the promissory note. It does not arise out of the imposition of fines. The mortgagor's obligations can be compared to the obligation of a condominium owner to pay common area fees.
In contrast, although the 1982 Act limits the amount of the fine and requires prior notice and an opportunity for a hearing, it gives the association the power to exercise its discretion to penalize defaulting owners and to enforce those penalties. The association is permitted to assess fines for prior violations of the declaration, bylaws, and rules and regulations, not to exceed five hundred dollars for residential and one thousand dollars ($1000.00) for commercial condominiums. The association may assess daily fines for continuing violations, not to exceed one hundred dollars ($100) for residential and five hundred dollars for commercial condominiums. Unpaid fines are liens on the unit, which may be foreclosed upon by the association. Sections34-36.1-3.20 and 34-36.1-3.21.
Although other statutes permit debt collection without court intervention, none authorizes private entities to impose fines. Certain storage companies have liens on the stored property and can enforce the liens without application to court. See §34-46-1, et seq., entitled Dry Dock Facilities; and § 34-42-1, et seq., entitled Self-Service Storage Facilities. The operators of Dry Dock Facilities and Self-Service Storage Facilities have liens on stored property to the extent of charges and fees reasonably incurred in connection with the services performed. Sections 34-46-4 and 34-42-3.
Additionally, a review of the statutory scheme governing landlord/tenant relations reveals one section which permits a landlord to enforce charges without a court order. Under §34-18-19, a landlord may retain all or a portion of a tenant's security deposit (up to one month's periodic rent) without application to court to recover unpaid, accrued rent and also the amount of physical damages to the premises. The landlord has the discretion to determine the amount of physical damage sustained to the premises. Otherwise, a party alleging a breach of a rental agreement must apply to court for enforcement of his or her contractual rights. Self-help eviction is prohibited. Sections34-18-44 and 34-18.1-15.
It is the authority to impose fines and to enforce them that distinguishes the 1982 Act from other legislation. The power to impose daily fines further distinguishes the 1982 Act from other statutes. Although the unit owner is afforded an initial hearing before the fine is imposed, the daily fine continues to accrue without requiring that the owner be given additional opportunities to be heard. It is arguable that the association can permit the daily fines to accrue until they reach the amount of the owner's equity in the unit, and then, the association can choose to foreclose on the lien and deprive the owner of his or her interest in the condominium or the proceeds of its sale.
The power to impose daily fines which continue to accrue until a violation is corrected can be compared to the inherent power of the Court to punish for civil contempt. The Court possesses the power to impose sanctions to induce the contemnor to purge himself of contemptuous conduct. Sunbeam Corp. v.Black Decker (U.S.), Inc., 151 F.R.D. 11 (D. R.I. 1993). Sanctions for civil contempt may be sufficiently coercive to gain swift compliance. Marek v. Marek, 119 R.I. 841,383 A.2d 1031 (1978). The distinctive characteristic of civil contempt is that the contemnor is to be given an opportunity to purge the contempt. U.S. v. City of Providence, 492 F. Supp. 602
(D. R.I. 1980). "It is well settled that the matter of contempt is addressed to the sound discretion of the trial justice, to be exercised in accordance with the particular facts and findings as to the extent and willfulness of respondent's contempt for the authority and dignity of the court." Zannini v. DowningCorporation, 701 A.2d 1016 (R.I. 1997) (quoting SchoolCommittee of North Providence v. North ProvidenceFederation of Teachers, Local 920, 468 A.2d 276 (R.I. 1973) (quoting Marek v. Marek, supra, § 10-32-33)).
It is interesting to note that the inherent power of the Court to impose fines for civil contempt does not permit the court to compel the contemnor to forfeit his or her property. "In any case, the contempt power does not comprehend the power to deprive one of his property and convey it to another." Britt v.Britt, 119 R.I. 191, 708, 383 A.2d 592 (1978).
The early case of G. D. Taylor Co. v. Place, 4 R.I. 324
(1856) continues to be cited by the court on issues involving Article 10. (See Berbarian v. Lussier, supra. and Sartor v.Coastal Resources Management Council, supra.) When the Court examines the power delegated to condominium associations under the 1982 Act to impose and enforce fines, it concludes that it is the delegation of judicial power, in the same constitutional sense referred to in G. D. Taylor Co. v. Place, supra. In that case, the court stated:
 ". . . It may safely be said, that to hear and decide adversary suits at law and in equity, with the power of rendering judgments and entering upon decrees according to the decision, to be executed by the process and power of the tribunal deciding, or of another tribunal acting under its orders and according to its direction, is the exercise of judicial power, in the constitutional sense. . . ." Id. at 336.
The association is authorized to hear disputes concerning allegations that unit owners have violated the declaration, bylaws, or rules and regulations of the condominium. The 1982 Act permits the association to determine those controversies and to issue orders directing violators to pay fines. Finally, the act empowers the association with the ability to enforce its orders by depriving a violator of his property by foreclosure. In this capacity, the association acts as a tribunal exercising judicial power.
For the foregoing reasons, the Court finds that the 1982 Act represents an unconstitutional delegation of judicial or police power to the condominium association, a private entity.[1]
Counsel shall submit the appropriate order for entry.
[1] Having do determined, the Court does not reach the question of whether applying the 1982 Act to the subject dispute would significantly modify the relation between the plaintiff and the condominium association.