DECISION
The plaintiff, Gerald P. Zarrella (Zarrella), appeals from an April 6, 2001 decision of the Town of New Shoreham Zoning Board of Review (the board) that denied his application for dimensional relief. Appellate jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
Zarrella owns an undeveloped lot on Spring Street in the Town of New Shoreham, legally described as Lot 126 on Plat 8 (the property). Measuring 100 feet by 100 feet, the property is a legal nonconforming lot of record located in a Residential A Zone.[1]
Desirous of constructing a vacation home for his family of four on his property, Zarrella engaged the services of architect Jacqueline Zannini (Zannini). After reviewing several of Zannini's proposals, Zarrella selected a 24'-by-32' design that required relief from certain dimensional specifications in the Town's Zoning Ordinance (ordinance). In particular, Zarrella's proposed structure required relief from § 306, which includes a 50-foot front, rear, and side setback regulation.[2]
Also, with more than 12% lot coverage, Zarrella's preferred design required relief from § 306's maximum lot coverage standard of 4%. Zarrella filed an application for this relief on January 12, 2001.
On February 26, 2001, the board held a public hearing on the matter of the requested variances. In support of the application, Zarrella presented several witnesses. However, his legal argument specifically and substantially addresses the testimony of only two of the witnesses: the architect, Zannini, and the certified general real estate appraiser, Michael Lenihan (Lenihan). Zannini, a Rhode Island licensed architect with more than 20 years experience, testified that she designed a house appropriate for the size and dimensions of the property. She further testified that she attempted to incorporate certain aspects of the surrounding buildings into her plans for Zarrella's project. After considering some alternative, smaller designs, Zannini testified that she "started to lay out the floor plans for a typical family of four or more or four with visitors," mindful of the "vacation oriented" nature of the island. Her design was essentially a two-story house with the potential for a finished basement that could be used for additional living space. Zannini concluded her testimony by stating that, in her opinion, the house she proposed was the smallest that would allow the owners to reasonably use the property as a single-family residence for more than a single person. Moreover, Zannini concluded that the requested variance would not alter the character of the surrounding area.
Lenihan, an appraiser with more than 30 years of experience,[3]
testified that he was familiar with the dimensions, zoning regulations, and general character of the property in question, as well as the proposed construction. He further testified that there was no other permitted use for this property "as appropriate . . . as a single family dwelling unit." Moreover, Lenihan testified that, in his opinion, none of the smaller, alternative proposals considered by Zarrella would allow him "a reasonable use of . . . [his] property as a single family dwelling unit." As Lenihan stated, the property, with its ocean view, is "a very valuable piece of land." Consequently, according to Lenihan, "the highest and best use is to put up a single family dwelling that would have some market appeal." Lenihan also testified that Zarrella's proposed construction would be appropriate in relation to the area, providing the basic, minimum services (living room, dining area, kitchen, storage, garage, three bedrooms, and an upstairs bath). In Lenihan's opinion, "anything much smaller than [the proposed construction] . . . is not going to fit into what . . . [the Zarrellas] intend to use the house for, or what any reasonable person buying the house would want to use it for." In addition, Lenihan stated that the hardship on Zarrella caused by a denial of his application for a variance would amount to more than a mere inconvenience, and that he was unaware of any reasonable alternatives to the proposal selected by Zarrella that would allow him the reasonable enjoyment of the residential use of his property.
Members of the board then asked Lenihan questions, attempting to divine the basis of his comparisons between the proposed construction and other residences on the island. In particular, on examination from the board, Lenihan stated that none of the houses in the surrounding area approached the proposed construction's height of 35 feet. Also, Lenihan noted the differences between Zarrella's proposal and smaller homes on similarly-sized lots for which the board had approved variances. However, Lenihan stated that, notwithstanding the larger dimensions of the proposed construction, the property is situated so as to enjoy the benefit of adjoining larger parcels which have not yet been developed. Consequently, the proposed construction would look relative and proportional in comparison to the rest of the neighborhood. Despite the proposed construction's inclusion of four bathrooms, Lenihan continued to characterize it as a "small house."
Also present at the hearing were objectors Gene and Ellen Davis, owners of real property located within 200 feet of Zarrella's proposed construction. Mr. Davis offered testimony, exhibits, and legal argument in opposition to the application. However, Mr. Davis agreed, in general, that Zarrella's proposal was "a very compact plan."
On April 6, 2001, the board unanimously voted to deny Zarrella's application for dimensional relief. In its decision, the board first explained how the design selected by him would violate the setback and lot coverage provisions of § 306. Then, after briefly reviewing the testimony of Lenihan, Zannini, and Zarrella's wife, the board found that the proposed construction was "a very intensely developed residence," and that there were "no inherent limitations which prevent the applicant from building a single family dwelling which requires fewer and lesser variances than those requested." Namely, the board found that where the Residential A Zone allows up to 4% lot coverage, Zarrella's design required 12.16%. Consequently, the board determined that the relief sought by Zarrella was distinguishable from the "many occasions" the board granted variances permitting the construction of modestly designed single family residences on nonconforming lots of record. Based on these findings, the board concluded that although the placement of any structure on the property would require "some dimensional variances," Zarrella provided no evidence that the relief he sought was the least required to enjoy a legally permitted use. Moreover, the board concluded that Zarrella failed to prove there "was no reasonable alternative to enjoy the legally permitted use of a single family dwelling." The decision states:
 "Mr. Lenihan and Mrs. Zarrella . . . said that the size of the dwelling was necessary to support the lifestyle which the owners required. We cannot decide zoning relief based upon the personal preferences of any owner. Any relief we grant must be based on the property and its inherent limitations, and not upon the needs and desires of a particular applicant."
Zarrella filed this timely appeal from the board's decision. In his memorandum, Zarrella claims that the board employed an incorrect interpretation of the applicable standard when it required him to demonstrate no alternative to enjoy a legally permitted use, as opposed to demonstrating that which was reasonably necessary for a full enjoyment of a permitted use. Therefore, according to Zarrella, the board's decision was affected by an error of law. Additionally, he argues that the board's decision is not based on substantial evidence and was clearly erroneous.
In response, the board disputes neither Zarrella's hardship nor his need for zoning relief. Instead, the board argues that he simply failed to meet the applicable standards for granting dimensional relief, particularly in regards to the reasonableness of his request.
 Standard of Review
The standard of review for this Court's appellate consideration of the board's decision is outlined at G.L. 1956 § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979));Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolouv. Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978)). The essential function of the zoning board is to weigh evidence, with discretion to accept or reject the evidence presented. Bellevue ShoppingCenter Associates v. Chase, 574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "can `conscientiously find'" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v. Coastal Resources ManagementCouncil, 542 A.2d 1077, 1083 (R.I. 1988).
 Finally, the board was governed by the following standard:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards [be] . . . entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in section 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." G.L. 1956 § 45-24-41(c) (d).
 The Dimensional Variance
Subsequent to the board's decision, § 45-24-41(d)(2) has been amended. The newly amended subsection (d)(2) has eliminated the requirement that an applicant show that "there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property."
Prior to this amendment, the Supreme Court of Rhode Island interpreted subsection (d)(2) to require an elevated demonstration on an applicant's behalf in order to qualify for dimensional relief. Sciacca v. Caruso,769 A.2d 578 (R.I. 2001). In Sciacca, our Supreme Court stressed that the Rhode Island Zoning Enabling Act, P.L. 1991, ch. 307, § 1 requires applicants to also show that "`there is no other reasonable alternative toenjoy a legally permitted beneficial use of one's property.'" Sciacca,
769 A.2d at 583 (quoting § 45-24-41(d)(2)) (emphasis in original). This interpretation changed the so-called Viti doctrine, under which an applicant needed only to demonstrate that the hardship complained of constituted more than a mere inconvenience. See Viti v. Zoning Bd. ofReview, 92 R.I. 59, 166 A.2d 211 (1960).
Thus, at the time of the board's decision, the applicable test for dimensional relief was whether there is any other reasonable alternative to enjoy a legally permitted beneficial use of one's property. SeeBernuth v. Zoning Bd. of Review, 770 A.2d 396, 400 (R.I. 2001) (specifically applying Sciacca's interpretation of § 45-24-41(d)(2) to the standards in § 706 of the Town Ordinance because the two provisions basically share the same language). Despite Zarella's arguments to the contrary, the board properly utilized this test in its denial of Zarella's application. However, as mentioned, subsequent to the board's decision, this test has been struck from subsection (d)(2). Accordingly, this Court remands Zarella's application to the board so that the board may consider his application under the newly amended subsection (d)(2).
 Conclusion
After reviewing the record, the Court remands Zarella's application back to the board. The board is instructed to consider Zarella's application under the recently amended G.L. 1956 § 45-24-41 (d).
Counsel shall submit the appropriate judgment for entry.
[1] The New Shoreham Zoning Ordinance § 113(E) addresses the applicability of the zoning regulations to "Single Non-Conforming Recorded Lots." This Section provides:
 "A lot or parcel of land having lot frontage or lot area which is less than required in the Zoning District in which it is located may be considered buildable regardless of the lot frontage or lot area, provided such lot or parcel of land was shown on a plat or on a deed duly recorded prior to the effective date of this Ordinance, and further provided that at the time of such recording the lot or parcel of land so created conformed in all respects to the minimum requirements of the Zoning ordinance in effect at that time. Nothing in this Section shall be construed as exempting single non-conforming lots of record from complying with the Maximum Lot Building Coverage or Maximum Lot Coverage, Maximum Height and Setback requirements for the Zoning District in which such lot is located. Any lot meeting those requirements shall be considered as a conforming lot of record."
[2] This Court takes notice that no building could be constructed on the property according to this provision without some relief.
[3] Lenihan explained that he has only been a "licensed" appraiser since 1992, the year that Rhode Island began licensing professionals in this field.